Christopher J. Reichman SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
Email: ChrisR@Prato-Reichman.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CLARK, individually and on Behalf of All Others Similarly Situated, | Case No.: 3:24-cv-00568-JSC |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| VIA RENEWABLES, INC, F/K/A SPARK ENERGY, INC., | |
| Defendant. | Hon. Judge Jacqueline Scott Corley |
| | Hearing Date: March 6, 2025 |
| | Hearing Time: 10:00 am |
| | Courtroom: 8 |

i

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . 1

I. STATEMENT OF FACTS . . . . . . . . . 1

    A. Statutory Backdrop & Elements . . . . . . . 1

    B. Facts Regarding Plaintiff Mr. Clark & Putative Class. . . . 2

II. THE PROPOSED CLASS . . . . . . . . . 4

III. ARGUMENT AND AUTHORITY . . . . . . . 5

    A. Plaintiff Satisfies the Requirements of Rule 23(a) . . . . 5

        1. The Numerosity Requirement Is Met . . . . . 6

        2. The Commonality Standard Is Met . . . . . 9

        3. The Typicality Standard Is Met . . . . . 11

        4. The Class Is Adequately Represented . . . . . 13

    B. Plaintiff Satisfies the Requirements of Rule 23(b)(3) . . . 15

        1. Common Issues Predominate . . . . . . 15

        2. A Class Action Is Superior . . . . . . 18

            a. Ascertainability Is Not A Factor In This Circuit . . 19

            b. This Case Is Manageable . . . . . 19

    C. The Court Should Appoint Prato & Reichman, APC As Class Counsel . 21

    D. The *Bristol-Myers* Decision Does Not Apply To Class Actions . . 21

IV. POTENTIAL FURTHER SUBCLASSING . . . . . 24

V. CONCLUSION. . . . . . . . . . 25

# <u>TABLE OF AUTHORITES</u>

## **Cases**

<u>Supreme Court</u>

*Amchem Prod., Inc. v. Windsor*,

      521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)   .    .   14

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,

      133 S. Ct. 1184 (2013)   .    .    .    .    .    .    5-6,15

*Bristol-Myers Squibb Co. v. Superior Court of California*,

      137 S. Ct. 1773 (2017)   .    .    .    .    .    .    21-24

*Erica P. John Fund, Inc. v. Halliburton*,

      131 S. Ct. 2179 (2011)   .    .    .    .    .    .   16

*Devlin v. Scardelletti*,

      536 U.S. 1, 9 (2002)   .    .    .    .    .    .   23

*Hansberry v. Lee*,

      311 U.S. 32, 41 (1940)   .    .    .    .    .   22

*Mallory v. Norfolk Southern Railway Co.*,

      143 S. Ct. 2028 (2023)   .    .    .    .    .   24

*Mims v. Arrow Fin. Servs. LLC*,

      132 S. Ct. 740 (2012)   .    .    .    .    .   1-2

*Snyder v. Harris*,

      394 U.S. 332, 340 (1969)   .    .    .    .   23

*Tyson Foods, Inc. v. Bouaphakeo*,

      577 U.S. 442 (2016)   .    .    .    .   5,10

*Wal-Mart Stores, Inc. v. Dukes*,

      131 S.Ct. 2541 (2011)   .    .    .   9-10

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

Circuit Courts

*Abdullah v. U.S. Sec. Assoc., Inc.*,

    731 F.3d 952 (9th Cir. 2013)  .    .    .    .    .    .    5,9,15

*ACA International v. F.C.C.*,

    885 F.3d 687(D.C. Cir. 2018)  .    .    .    .    .    .    1

*Bridgeview Health Care Ctr., Ltd. v. Clark*,

    816 F.3d 935 (7th Cir. 2016)  .    .    .    .    .    .    12

*Briseno v. ConAgra Foods, Inc.*,

    844 F.3d 1121, 1121 (9th Cir. 2017)  .    .    .    .    19

*Brown v. Ticor Title Ins.*

    982 F.2d 386, 390 (9th Cir. 1992)  .    .    .    .    .    14

*CE Design Ltd. v. King Architectural Metals, Inc*.,

    637 F.3d 721, 728 (7th Cir. 2011)  .    .    .    .    .    14

*Chennette v. Porch.com, Inc.*,

    50 F.4th 1217 (9th Cir. 2022)  .    .    .    .    .    16

*Crawford v. Honig*,

    37 F.3d 485, 487 (9th Cir. 1994)  .    .    .    .    .    13

*Edwards v. First Am. Corp.*,

    798 F.3d 1172 (9th Cir. 2015)  .    .    .    .    .    5-7, 9, 11

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970 (9th Cir. 2011)  .    .    .    .    .    6-7, 11

*Evon v. Law Offices of Sidney Mickell*,

    688 F.3d 1015 (9th Cir. 2012)  .    .    .    .    .    13

*Go-Video Inc. v. Akai Electric Co.*,

    885 F.2d 1406, 1414-15 (9th Cir. 1989)  .    .    .    .    23

*Golan v. Veritas Entm't, LLC*,

    788 F.3d 814 (8th Cir. 2015)  .    .    .    .    .    12

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992)   .     .     .     .     .     11-13

*In re Northern Dist. of California, Dalkon Shield IUD Products*
    *Liability Litigation*, 693 F.2d 847 (9th Cir. 1982)  .    .    .    18

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir.1983)   .    .    .    .    .    14

*Koby v. ARS Nat'lServs., Inc.*,
    846 F.3d 1071, 1076 (9th Cir. 2017)  .    .    .    .    23

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*
    *Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001)  .    18-19

*Molock v. Whole Foods Mkt. Grp.*,
    952 F.3d 293, 296 (D.C. Cir. 2020)  .    .    .    .    22, 23

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015)   .    .    .    .    19

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441, 447 (7th Cir. 2020)  .    .    .    .    23

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)   .    .    .    .    5-6, 9-11, 15

*Owino v. Core Civic, Inc.*,
    60 F.4th 437 (9th Cir. 2022)   .    .    .    .    9-10, 15

*Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Penn.*,
    442 F.3d 1239 (10th Cir. 2006) .    .    .    .    .    2

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)   .    .    .    .    .    9,15

*Sali v. Corona Regional Medical Center*,
    889 F.3d 623, 634-35 (9th Cir. 2018)  .    .    .    .    14

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009)   .    .    .    .    .    1

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Sec. Inv. Prot. Corp. v. Vigman*,
     764 F.2d 1309, 1315 (9th Cir. 1985) . . . . . . 23

*Suchanek v. Sturm Foods, Inc.*,
     764 F.3d 750 (7th Cir. 2014) . . . . . . . 11

*Susinno v. Work Out World, Inc.*,
     862 F.3d 346, 352 (3rd Cir. 2017) . . . . . . 2

*True Health Chiropractic, Inc. v. McKesson Corp.*,
     896 F.3d 923, 930-31 (9th Cir. 2018) . . . . . . 25

*Van Patten v. Vertical Fitness*,
     847 F.3d 1037 (9th Cir. 2017) . . . . . . 2,13,16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
     617 F.3d 1168 (9th Cir. 2010) . . . . . . . 18

*Zinzer v. Accufix Research Institute, Inc.*,
     253 F.3d 1180 (9th Cir. 2001) . . . . . . . 18

District Courts

*Agne v. Papa John's Int'l, Inc.*,
     286 F.R.D. 559 (W.D. Wash. 2012) . . . . . 6,11-12,19

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
     2015 WL 5675798 (S.D. Cal. Sept. 24, 2015) . . . . 6,20

*Birchmeier v. Caribbean Cruise Line, Inc.*,
     302 F.R.D. 240 (N.D. Ill. 2014) . . . . . . 6

*Booth v. Appstack, Inc.*,
     2015 WL 1466247 (W.D. Wash. March 30, 2015) . . . . 6,19

*Celano v. Marriott Int'l Inc.*,
     242 F.R.D. 544 (N.D. Cal. 2007) . . . . . . 6

*Galvan v. KDI Distribuation Inc.*,
     2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) . . . . 20

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Ikuseghan v. MultiCare Health Sys.*,

    2015 WL 4600818 (W.D. Wash. July 29, 2015)    .    .    .    .    6,19

*In re Rubber Chem. Antitrust Litig.*,

    232 F.R.D. 346 (N.D. Cal. 2005)    .    .    .    .    .    6

*Kavu v. Omnipak Corp.*,

    246 F.R.D. 642 (W.D. Wash. 2007)    .    .    .    .    .    19

*Knutson v. Schwan's Home Serv., Inc.*,

    2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) .    .    .    .    .    6

*Kristensen v. Credit Payment Serv.*,

    12 F.Supp.3d 1292 (D. Nev. 2014)    .    .    .    .    .    6

*Manno v. Healthcare Revenue Recovery Grp., LLC*,

    289 F.R.D. 674 (S.D. Fla. 2013)    .    .    .    .    .    6

*Micheal Knotts v Nissan North America, Inc.*,

    346 F.Supp.3d 1310, 1331 (D. Minn., Oct. 10, 2018)    .    .    .    24

*Moser v. Health Insurance Innovations, Inc.*

    2019 WL 3719889 (S.D. Cal. 2019), *remanded on other grounds,*

        *Moser v. Benefytt, Inc.*, 8 F.4th 87 (9th Cir 2021)    .    .    14-15

*National Federation of the Blind v. Target Corp.*,

    582 F.Supp.2d 1185 (N.D. Cal. 2007) .    .    .    .    .    .    7

*Saulsberry v. Meridian Fin. Servs., Inc.*,

    2016 WL 3456939 (C.D. Cal. Apr. 14, 2016)    .    .    .    .    20

*Sloan v. Gen. Motors LLC*,

    287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018)    .    .    .    24

*Stemple v. QC Holdings, Inc.*,

    2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) .    .    .    .    .    6

*Sweet v. Pfizer*,

    232 F.R.D. 360, 360 (C.D. Cal. 2005)    .    .    .    .    .    14

/ / /

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Whitaker v. Bennett Law, PLLC,*
 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) . . . . 6,12,15

*Xavier v. Philip Morris USA Inc.,*
 787 F. Supp. 2d 1075 (N.D. Cal. 2011) . . . . . 20


Federal Communications Commission Orders

*Omnibus TCPA Order,*
 2015 WL 4387780 (July 10, 2015) . . . . . . 1

*In the Matter of Rules and Regulations Implementing the Telephone*
*Consumer Protection Act of 1991,* 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008) . 3,16

*In the Matter of Rules and Regulations Implementing the Telephone*
*Consumer Protection Act of 1991,* FCC 12-21, ¶ 33 (February 15, 2012) . 3


Statutes

Telephone Consumer Protection Act of 1991, 47 U.S.C § 227 . . 2-3,8-9,16

Public Law No. 108-82 (Do-Not-Call Implementation Act) . . . 1

28 U.S.C. § 636(c) . . . . . . . . . 23

28 U.S.C. § 1332 . . . . . . . . . 23


Rules, Regulations & Miscellaneous

Federal Rule of Civil Procedure 23 . . . . 5-6,11-15,18-21,23,25

47 C.F.R. § 64.1200 . . . . . . 1-3,10,13,16

Congressional Findings,
 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227) . . 2

Cal. P.U. Code Section 489(a) . . . . . . . 17

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

**INTRODUCTION**

This case is brought by the Plaintiff, Mr. Brian Clark ("Mr. Clark" or "Plaintiff") of behalf of all others similarly situated against Defendant VIA RENEWABLES, INC, F/K/A SPARK ENERGY, INC. ("Via Renewables" or "Defendant") for violations of the Telephone Consumer Protection Act ("TCPA") caused by Defendant illegal telemarketing to numbers on the National Do-Not-Call Registry ("DNC Registry") and use of a pre-recorded message. There is sufficient evidence to support certification and designation of class representative and class counsel, and the evidence will support full liability of the Defendant at trial.

**I. STATEMENT OF FACTS**

**A.  Statutory Backdrop & Elements**

Congress enacted the TCPA to prevent "intrusive nuisance calls" to consumers' telephones that it determined were "invasive of privacy." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012) ("*Mims*"); *see also, Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). To further this end the Federal Trade Commission was tasked with creating a National Do-Not-Call Registry ("DNC Registry") so that consumers could place their number on the DNC Registry to explicitly stop telemarketing to such consumer. Public Law No. 108-82 (Do-Not-Call Implementation Act). Under the TCPA, it is unlawful for any entity to transmit a call for telemarketing purposes to a residentially subscribed number on the DNC Registry. 47 C.F.R. § 64.1200(c)(2).

Notwithstanding the fact that the TCPA is more than 25 years old "[m]onth after month, unwanted robocalls and texts [] top the list of consumer complaints received by the [Federal Communications] Commission." [1] Unlike many federal

---

[1] *Omnibus TCPA Order*, 30 FCC Rcd. 7961,7964, ¶ 1 (July 10, 2015), *overruled in part on other grounds*, *ACA International v. F.C.C.* 885 F.3d 687 (D.C. Cir. 2018).

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit Congressional Findings. 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227). *Mims* explicitly cited these Congressional Findings in noting that "'telemarketing telephone calls' . . . were rightly regarded by recipients as 'an invasion of privacy.'" *Id.* (citing 105 Stat. 2394). The Ninth Circuit, in accord with other circuits, has held that invasion of privacy is the only harm a Plaintiff need show for standing to claim a TCPA violation. *Van Patten v. Vertical Fitness*, 847 F.3d 1037 (9th Cir. 2017) ("*Van Patten*"); *see also*, *e.g.*, *Susinno v. Work Out World, Inc*., 862 F.3d 346, 352 (3rd Cir. 2017); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Penn.*, 442 F.3d 1239, 1249 (10th Cir. 2006).

The elements of the DNC Registry violation are simple:

1) transmit a call,
2) for telemarketing purposes,
3) to a residentially subscribed number,
4) on the DNC Registry.

47 C.F.R. § 64.1200(c)(2). The only defenses are statutory: safe harbor for calls placed in error by a caller who can prove it follows specified DNC Registry compliance practices (47 C.F.R. § 64.1200(c)(2)(ii)); or prior express written consent (47 C.F.R. § 64.1200(c)(2)(ii)); or the caller has a personal relationship with the called party consent (47 C.F.R. § 64.1200(c)(2)(ii)).

The elements of a pre-record message violation are equally simple;

1) initiate,
2) a telemarketing call,
3) to a residentially subscribed number,
4) using an artificial or recorded voice to deliver a message.

47 U.S.C. § 227(b)(1)(B). The Federal Communications Commission ("FCC") exempted calls that did not constitute telemarketing from the subsection above by rule. 47 C.F.R. § 64.1200(a)(3)(ii-iii). In either case, "[e]xpress consent is not an

element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017), *citing*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008); *see also*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 12-21, ¶ 33 (February 15, 2012). The penalty for each call and infraction of either of these rules is $500, which may be trebled to $1,500 upon a showing the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

## **B.  Facts Regarding Plaintiff Mr. Clark & Putative Class**

Mr. Clark is a resident of Alameda in the State of California whose residential phone number is 510-316-9772. [Declaration of Brian Clark ("Decl. Clark") ¶3-4]. Mr. Clark received ten (10) telemarketing calls from Defendant's agent, Energy BPO, Corp. ("Energy BPO"), from March 3, 2023 to March 21, 2023 on his residential phone. [Decl. Clark ¶5]. In each of the ten (10) calls Mr. Clark received Defendant's agent, Energy BPO, left a voicemail message which stated the following, "Hello this is Michelle calling about your natural gas bill, I need you to call me back as soon as possible at 888-928-3199 thank you." [Decl. Clark ¶6-7, Exhibit 8-17]. The voicemail calls obviously used a prerecorded voice in each completely identical message transmitted to Mr. Clark. [Decl. Clark ¶7-8, Exhibit 8-17]. None of the voicemail calls "state clearly the identity of the business, individual, or other entity that is responsible for initiating the call." [Id.], 47 C.F.R. § 64.1200(b)(1).[2] Mr. Clark, to determine who was calling, called the 888-928-3199 number and was connected to a line which said it was for "Spark

---

[2] The failure to properly identify the caller obviously violates 47 C.F.R. § 64.1200(b)(1), which requires all prerecorded calls, "[a]t the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call."  Since there are some questions about how the private rights of action in 47 U.S.C. 227(b-c) relate to 47 C.F.R. § 64.1200(b)(1), Plaintiff strategically chose not to make this claim.

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

Energy". [Decl. Clark ¶9-10, Exhibit 18]. Mr. Clark's registered his residential phone number on the DNC Registry on or about August 27, 2019 and has kept in on the DNC Registry continuously since. [Decl. Clark ¶7-8, Exhibit 7]. Mr. Clark then instituted this suit seeking class relief.

## II. THE PROPOSED CLASS

Plaintiff seeks to certify the following two subclasses:

Sub-Class No. 1  ("DNC Subclass")

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from January 30, 2020 to the present, including up to and through trial.*

Sub-Class No. 2  ("Prerecord Subclass")

*All persons and entities located within the United States of America to whose residential telephone line Defendant and/or its agents transmitted a call using a prerecorded voice without prior express written consent from the called party at any time from January 30, 2020 to the present, including up to and through trial.*

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's

legal representatives, assignees, successors, employees, and immediate family members of employees. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.[3]

## III. ARGUMENT AND AUTHORITY

### A.  Plaintiff Satisfies the Requirements of Rule 23(a)

A proposed class must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1177 (9th Cir. 2015) ("*Edwards*"). Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs "carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 424 (2022) ("*Olean*"). Plaintiffs may use any admissible evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016). Testimony of employees and agents is admissible where the, "admissions were material and [are] properly before us." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 966 (9th Cir. 2013).

A district court must conduct a "rigorous" analysis of the Rule 23 requirements, but the rule "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust*

---

[3] The proposed class definitions have been lightly edited from the FAC to indicate there is a singular Defendant at class certification instead of plural Defendants. "Defendants and/or their agents" has been changed to "Defendant and/or its agents" and "Defendants" changed to "Defendant" for excluded persons.

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Funds*, 133 S. Ct. 1184, 1194–95 (2013). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Edwards*, 798 F.3d at 1178, *quoting*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983, n. 8 (9th Cir. 2011). The primary question in analyzing the factors is whether the case is, "*capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666.

"In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two classes under the TCPA). Accordingly, Courts in the Ninth Circuit and elsewhere frequently certify classes involving unlawful telemarketing calls.[4]

### 1. The Numerosity Requirement Is Met

The numerosity requirement is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement, Plaintiff need not demonstrate the exact number of class members, nor is there a particular "magic number" that is required. *See*, *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005). Generally, however, numerosity is satisfied when the class comprises 40 or more members, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007); *see also*, *National*

---

[4] *See, e.g., Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818, at *8 (W.D. Wash. 2015); *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *17 (W.D. Wash. 2015); *Bee, Denning, Inc. v. Capital Alliance Grp.*, 2015 WL 5675798, at *15 (S.D. Cal. 2015); *Kristensen v. Credit Payment Serv.*, 12 F.Supp.3d 1292 (D. Nev. 2014) ("*Kristensen*"); *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *7 (S.D. Cal. 2014) ("*Whitaker*"); *Stemple v. QC Holdings, Inc.*, 2014 WL 4409817, at *10 (S.D. Cal. 2014) (certifying Rule 23(b)(3) class of individuals who were called by defendant for the purpose of collecting a debt); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 693 (S.D. Fla. 2013) (certifying a litigation class comprising of all Florida residents who had received an automated telephone call on their cellphone seeking to collect an alleged medical debt); *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *11 (S.D. Cal. 2013) (certifying class of persons who received autodialed calls with a telemarketing message on their cell phones); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) ("*Agne*") (certifying litigation class of cell phone owners who received text messages promoting the defendant's pizza products).

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*Federation of the Blind v. Target Corp.*, 582 F.Supp.2d 1185, 1200 (N.D. Cal. 2007) (use of statistical evidence in determining numerosity approved).

In this case it is certain that the Defendant made or caused to be made, not hundreds, not thousands, but millions of calls. This is because of the sheer scope of their telemarketing activity.

Just with the limited sample call records covering only about three weeks of the years-long subclass periods that have been made available so far, Energy BPO, the agent hired by Defendant to make telemarketing calls[5], made over 300,000 calls. [Declaration of Justin Prato ("Decl. Prato"), ⁋22, Exhibit 5-1-5-3; Declaration of Matt Judkin ("Decl. Judkin") ⁋2;7-10]. This sheer number of calls in just this small sample of call records by itself shows a near certainty that there would be class members too numerous to effectively joinder.

And, upon expert review of the just the sample call records produced so far and filtering for the claim elements requirements, at least 18,641 people's residential lines listed on the DNC Registry were called at least twice and thus meet the *prima facie* TCPA elements in this case for the DNC Subclass. [Decl. Prato, ¶18, Verkhovskaya Report, Exhibit 3, pg 22]. This is more than sufficient to show numerosity based only on the three-week call log sample in a telemarketing campaign that went on at this pace for over three years. [Decl. Judkin, ⁋2;7-10].

While this alone is sufficient for numerosity, we can estimate the full DNC Subclass size from the sample for the Court. Since the sample call records cover only about three weeks of calls, we can estimate that the calls created about 6000 persons meeting the DNC Subclass requirements per week because all calls—whether prerecorded or live—would be a DNC violation where there are more than

---

[5] Defendant Via Renewables hired agent Energy BPO specifically to make outbound telemarketing calls to numbers provided by Via Renewables to sell Via Renewables' energy services. [Declaration of Matt Judkin ("Decl. Judkin") ⁋2;7-10]. While Plaintiff does not need to show agency at the class certification phase, the calling records showing numerosity all come from Energy BPO since they were hired to do the telemarketing. *Edwards*, 798 F.3d at 1178, *quoting*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983, n. 8 (9th Cir. 2011).

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

two calls in a year and the number is on the DNC Registry. [Decl. Prato, ¶24]. From the date Energy BPO began the telemarketing campaign, June 2021, until present there are approximately 184 weeks, and thus estimate that there are approximately 1.1 million members of the DNC Subclass. [Id.]

As to the Prerecord Subclass, all of the calls were made using the same or similar methods according to the agent for the Defendant, Energy BPO. [Decl. Judkin. ¶5]. As with the rest of the call recipients, when Mr. Clark let the call go to voicemail, every one of the calls made by Energy BPO left the identical prerecorded voicemail message. [Decl. Clark ¶6-7, Exhibit 11-20]. Since Energy BPO made all the calls using the same or similar methods, all the telemarketing calls which went to voicemail left the same prerecorded voice message Mr. Clark received. [Id.]. The three-week sample call records produced to date clearly denote which calls went to an answering machine or voicemail. [Decl. Prato, ¶22, Exhibit 5-1 through 5-2 (column H listing "Answering Machine Detected"), Exhibit 5-3 (column D, Energy BPO user, listing "VDAD")]. And review of the records shows that there are thousands, if not more such prerecorded voicemail calls. [See., e.g., Decl. Prato, ¶22, Exhibit 5-1 (cells H366-H368, H456-H458, & etc), Exhibit 5-2 (cells H105-H109, H111, H119, H185-H187 & etc), Exhibit 5-3 (cells D15, D17, D37, D51, D67 & etc)]. And the Prerecord Subclass violation just requires that the call be transmitted to a residential line, prerecorded, and telemarketing, so every prerecorded call here creates a Prerecord Subclass member without further narrowing like in the DNC Subclass which requires the two calls in a year and DNC Registration as well. *See*, 47 U.S.C § 227(b)(1)(B), c.f., 47 U.S.C. § 227(c)(5). Thus, just from the call log sample, there are clearly thousands of Prerecord Subclass members which meets numerosity.

Clearly both sub-classes would be so numerous as to make joinder impractical. The numerosity standard is clearly met with the potential class conservatively numbering in the tens of thousands, and realistically in the hundreds

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

of thousands or more. This is sufficient at the class certification stage for numerosity. *See*, *Edwards*, *supra* ("should not 'turn class certification into a mini-trial' on the merits.")

      2.  <u>The Commonality Standard Is Met</u>

      The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this element, Plaintiff must allege a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) ("*Dukes*"). "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." *Id*. (internal marks and citation omitted; emphasis in original). A "single *significant* question of law or fact" satisfies the commonality requirement. *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original, quotation marks omitted). "Commonality is necessarily established where there is a class-wide policy to which all class members are subjected." *Owino v. Core Civic, Inc*. 60 F.4th 437, 445-46 (9th Cir. 2022) ("*Owino*"); *citing*, *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("*Parsons*")

      As the Ninth Circuit *en banc* ruled in *Olean* in deciding that antitrust class action: "The question whether each member of the DPP class suffered antitrust impact 'is central to the validity of each one of the [DPP] claims.'" *Olean*, 31 F4th at 670, *quoting*, *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541. In our case, the central question is whether each class member suffered TCPA impact from Via Renewables telemarketing campaign run by Energy BPO. This central inquiry can be simply answered in the affirmative as to all class members because:

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

1) Via Renewables—though Energy BPO—admits it called numbers on the DNC Registry and used prerecorded calls because it contends it has consent to do so [Decl. Prato, ⸿23, Exhibit 6-1 -6-3];

2) all the people's phone numbers in the Energy BPO call record samples that were called even though they were on the DNC Registry [Decl. Prato, ¶18, Verkhovskaya Report, Exhibit 3, pg 22], and

3) the admitted fact that all of the illegal calls were made using the same procedures, or class-wide policy. *Owino*, supra (class-wide policy), [Decl. Judkin, ⸿5].

Finally, as to alleged consent, Via Renewables says it used the same website and the same Trusted Form software for all of the alleged consents. [Decl. Prato, ¶14, Deposition of Ross Breiman ("Depo. Breiman") Pg 29 ln 4 to 25; Decl. Prato, ¶16, Deposition of Steve Rafferty (Depo. Rafferty") Pg 58 ln 1 to 15; Decl. Prato, ¶20, Deposition of Juilo Astorga ("Depo. Astroga") Pg 58 ln 1 to 15][6].  And the statements of Defendant's employees and agents are admissible evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016). Thus, consent is clearly an issue suitable for class-wide determination because all the identical alleged consents are all either legally valid or invalid as to all of the class members. To the extent Defendant argues consent, "It shows "that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F4th at 665, *citing*, *Dukes*, 564 U.S. at 349–50, 131 S.Ct. 2541.[7]

---

[6] Note that Mr. Clark contends that he never gave consent to the Defendant, and if fact did not file out their Trusted Form. [Decl. Clark ⸿16]. However, for class purposes this is not relevant because Plaintiff contends all of the consents are in sufficient on their face, so determining which are fake and which are not is unnecessary in this case.
[7] Plaintiff will argue at summary adjudication and/or trial that all of the alleged consents are invalid because they do not meet many of the statutory requirements for TCPA consent which require, for example, that consent be "evidenced by a signed, written agreement **between the consumer and seller**…" and that a consent between a third party and the consumer purporting to give consent to hundreds of other non-parties to the consent form is just impermissible consent-farming. 47 C.F.R. 64.1200(c)(2)(ii). However, this merits-issue is irrelevant to class certification, where the central inquiry is just whether the claims and defenses apply class-wide, which they do.

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

Thus, the preponderance of the evidence shows that the uniform conduct of the Defendant gave rise to the same harm for every class member, i.e., every person who registered their residential number on the DNC Registry or received a pre-recorded call. *Olean*, 31 F4th at 664 (preponderance of the evidence standard). Courts routinely find commonality where the class's claims arise from a uniform course of conduct on the part of the defendant. *See, Edwards*, 798 F.3d at 1182 (commonality satisfied where central questions was whether defendant's "pattern of conduct" violated RESPA); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question"); *Owino, supra* (holding same)*; see also, Agne,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) (where the plaintiff alleged that "all class members were sent substantially similar unsolicited text messages by the same defendants, using the same automatic dialing technology, commonality is satisfied").

### 3.     The Typicality Standard Is Met

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("*Hanon*"). "The test of typicality is whether the other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiff, and whether other class members have been injured in the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

of the named plaintiff's and that the injuries result from the same injurious course of conduct." *Hanon*, 976 F.2d at 666 (question and internal marks omitted).

Courts have found typicality where, as here, a defendant's practice of making the same contact to Plaintiff and the proposed class formed the basis of the class's claim. *See, Whitaker*, 2014 WL 5454398 at *5 (typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne*, 286 F.R.D. at 569 (typicality satisfied where the Plaintiff' claims, "like all class members' claims, [arose] from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor …"); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 940 (7th Cir. 2016) (declining to create a subclass when every class member had the same interest: to obtain the $500–per–recipient penalty for violations of the TCPA); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (typicality satisfied where Plaintiff did not hear the same telemarketing message as other class members, but both messages had the same promotional purpose).

In this case, Plaintiffs' claims are precisely coextensive with the claims of the proposed class members. Plaintiff and class members each received illegal telemarketing calls from Energy BPO on behalf of Via Renewables to their DNC registered number or using a pre-recorded message to their residential number during a highly organized calling campaign where all calls were conducted in the same manner. [Decl. Judkin. ¶5]. As recognized by Congress when it passed the TCPA, these calls violate the privacy rights of Plaintiff and the other class members. Thus, Plaintiff's claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as done to the rest of the classes. And, to the extent Defendant argues consent, the uniform consent webpages between third-party consent farmers and consumers attempting to obtain consent for a laundry list of hundreds of companies including

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

Via Renewables are either legally valid or invalid under the TCPA consent rules as to the entire class. *See*., *e.g.*, 47 C.F.R. 64.1200(c)(2)(ii). Accordingly, the typicality requirement is satisfied.

### 4.    The Class Is Adequately Represented

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor has two components. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *See, Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

Lead Plaintiff Mr. Clark is an adequate for the class and has no issues that any Court would ever find disqualifying. Outside of the main criteria that he has a common and similar claim to the class members, he has never been arrested for, charged with, or convicted of any felonies, nor any criminal or civil complaints for fraud, or fraudulent behavior, nor made any intentional false statements under oath. [Decl. Clark ¶14-15]. Indeed, in order to justify an attack on adequacy, a defendant must show that there is a **specific defense** to which the Plaintiff is uniquely susceptible, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). There is no such defense in this case as the only defense would be alleged consent (which Plaintiff did not provide), and where Defendant and its agents have testified at length that the consents are all uniform and identical, this defense applies class-wide, not in any unique ways as to Mr. Clark. And, general credibility attacks will not support an adequacy challenge because adequate representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994),

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

*quoting*, *Brown v. Ticor Title Ins*. 982 F.2d 386, 390 (9th Cir. 1992). The inquiry is designed "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives must be able to prosecute the action vigorously through qualified counsel." *Sweet v. Pfizer*, 232 F.R.D. 360, 360 (C.D. Cal. 2005) (internal quotation omitted). In other words, where the claimed credibility attack does not indicate a conflict of interest, it is not relevant. "Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class." *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 728 (7th Cir. 2011). "[A] court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation...." *Kline v. Wolf*, 702 F.2d 400 (2d Cir.1983). Again no such issues exist in this case, and Mr. Clark should be named as class representative.

Proposed class counsel, Prato & Reichman, APC, have filed more TCPA cases in federal and state courts in California than any other known law firm and are unquestionably subject matter experts with over a decade of experience in this area, as well as having experience in complex litigation and consumer class action law suits. [Prato Decl. ¶¶3-13]; [Declaration of Christopher Reichman ("Reichman Decl."), ¶3-15]; *See*, *Sali v. Corona Regional Medical Center*, 889 F.3d 623, 634-35 (9th Cir. 2018) (subject matter expertise and work on case relevant to adequacy of counsel). Additionally, Prato & Reichman, APC have successfully certified a TCPA class, and have been found adequate to be class counsel. *See*, *Moser v. Health Insurance Innovations, Inc*. (Not Reported in Fed. Supp.) 2019 WL

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

3719889 (S.D. Cal. 2019), *remanded on other grounds, Moser v. Benefytt, Inc*., 8 F.4th 87 (9th Cir 2021). The attorneys of Prato & Reichman, APC are more than adequate to represent this class.

## **B.  Plaintiff Satisfies the Requirements of Rule 23(b)(3)**

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). For the reasons set forth below, Plaintiffs satisfy these requirements.

### 1.    Common Issues Predominate

"A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *Abdullah*, 731 F.3d at 963–64 (quotation and internal marks omitted). "Rule 23(b)(3) [] does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal quotations omitted). Therefore, "[t]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.*; *see also, Olean*, 31 F. 4th at 670 (inquiry is whether only the "central questions" at issue in the case "predominates over any individualized inquiry"); *Whitaker*, 2014 WL 5454398 at *6 (predominance satisfied where the claims were brought pursuant to the TCPA, which the court defined as a "narrow statute with explicit confines defining both liability and available damages"). Predominance is satisfied in cases where the injury to the class members is traceable to the same injurious course of conduct by the Defendant. *Owino,* 60 F.4th at 445-46; *see also*, *Parsons*, 754 F.3d at 678

- 15 -

(holding that the "policies and practices to which all members of the class are subjected ... are the 'glue' that holds together the putative class").

"Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying action." *Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011). The elements of Plaintiff's class-wide TCPA claim of telemarketing to a number on the DNC Registry are 1) transmit a call, 2) for telemarketing purposes, 3) to a residentially subscribed number, 4) on the DNC Registry. 47 C.F.R. § 4.1200(c)(2). The only defenses are statutory: safe harbor for calls placed in error by a caller who can prove it follows specified DNC Registry compliance practices (47 C.F.R. § 64.1200(c)(2)(ii)); or prior express written consent (47 C.F.R. § 64.1200(c)(2)(ii)); or the caller has a personal relationship with the called party consent (47 C.F.R. § 64.1200(c)(2)(ii)). The elements of a pre-record message violation is just as simple; 1) initiate, 2) a telemarketing call, 3) to a residentially subscribed number, 4) using an artificial or recorded voice to deliver a message. 47 U.S.C. § 227(b)(1)(B). The only defense is express consent. *Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017), *citing*, *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008). All of the elements of the two causes of action can be established using common evidence, such as the call records, lead lists, and testimony of witnesses discussed above for the commonality factor.

Common evidence can be used to determine that the calls were transmitted because the calls are captured in the call records of the Defendant's agent Energy BPO. [Decl. Prato, ℙ23, Exhibit 6-1 -6-3; Decl. Judkin. ℙ3-7]. Whether a phone is residential or not is a simple factual matter of whether it is subscribed to a person or a business. In the Ninth Circuit, even if a phone is used for some business purposes, it is presumed to be residential if registered for personal use. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) ("In the absence of FCC

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

guidance on this precise point, we hold that plaintiffs' registered cell phones that are used for both personal and business purposes are **presumptively "residential"** within the meaning of § 227(c)." [emphasis added]). Furthermore, even if the Ninth Circuit had not set the presumption it did, phone services are tariffed and the tariff would define whether the service was for personal or business use.[8] Additionally, the Verkhovskaya Report has shown that it can use the telephone records to determine both if a number is on the DNC Registry and if it was business-associated during the time of the calls. [Decl. Prato, ¶18 Verkhovskaya Report, Exhibit 3, pg 18-22]. Common evidence can be used to determine that the calls were solicitations because Defendant's own agents admitted that the sole purpose was to sell energy products to persons via telemarketing. [Decl. Judkin. ¶2]. While Defendant may try to claim that some defensive theory is individualized, this does not change the fact that the entire *prima facie* case is common to all members, which is the crux of predominance. Furthermore, there is almost no evidence that would support that either consent or established business relationship affirmative defenses would require individualization rather than be treatable on a wide-scale basis, in fact the opposite is true where Defendant and its consent-farming contractors admit all the consents used the same website and verification method. [Decl. Prato, ¶14, Depo. Breiman, pg 29 ln 4 to 25; Decl. Prato, ¶16, Depo. Rafferty pg 58 ln 1 to 15; Decl. Prato, ¶20, Depo. Astroga, pg 58 ln 1 to 15]. Common issues predominate in this case because every element of the TCPA violations at issue are susceptible of proof on a class-wide basis. And, there is no evidence in the record of any affirmative defenses that would be highly individualized, and the affirmative defense of alleged consent is clearly applicable

---

[8] Cal. P.U. Code Section 489(a); *see also*, "General Order 96-B § 3.15 Definition: 'Tariffs' refer collectively to the sheets that a utility must file, maintain, and publish as directed by the Commission, and that set forth the terms and conditions of the utility's services to its customers; 'tariffs' may also refer to the individual rates, tolls, rentals, charges, classifications, special conditions, and rules of a utility." Cal. Pub. Utils. Comm'm, "Tariff Filing Requirements", available at https://www.cpuc.ca.gov/industries-and-topics/internet-and-phone/carrier-reporting-requirements/tariff-filing-requirements,

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

class-wide since all the consents are uniform. Additionally, as to any agency theory issues in this case, there is only one telemarketing vendor who made all the calls, Energy BPO, and therefore the determination as to Energy BPO's agency relationship that will affect all of the class members and the named Plaintiff in the same way. Thus, predominance is met.

### 2.   A Class Action Is Superior

The Court should certify the class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement's purpose is one of judicial economy and to assure that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id*. at 1175; *Zinzer v. Accufix Research Institute, Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001) (saying same); *In re Northern Dist. of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 856 (9th Cir. 1982) (holding same).

Given the large number of class members, the small dollar value of their individual claims ($500) compared to costs of litigation, and the multitude of common issues present, use of the class action device is the most efficient and fair means of adjudicating the claims that arise out of Defendant's unlawful telemarketing calls. Class treatment is superior to thousands of individual suits or piecemeal litigation because it conserves judicial resources and promotes consistency and efficiency of adjudication. Additionally, it is likely that most class members lack the resources necessary to seek individual legal redress for Defendant's misconduct and, without class treatment, would have no effective remedy for their injuries. *See, Local Joint Exec. Bd. of Culinary/Bartender Trust*

*Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Ikuseghan*, 2015 WL 4600818, at \*7 ("Because individual damages are small, it is unlikely that class members would litigate TCPA claims on their own"); *Agne*, 286 F.R.D. at 571 ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action …."); *Booth*, 2015 WL 1466247 (same), at \*13; *Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007) (same).

### a.    Ascertainability Is Not A Factor In This Circuit

Some Circuits have implied an "ascertainability" requirement into Rule 23. The Ninth Circuit has unequivocally ruled against any such requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1121 (9th Cir. 2017) ("*Briseno*") ("The panel therefore joined the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement."). Thus, Plaintiff does **not** need to show that literally every class member is individually identifiable for class certification.

### b.    This Case Is Manageable

One of the elements for determining the superiority of a class action is manageability. *See*, Fed. R. Civ. P. 23(b)(3). Manageability is not a separate requirement and, "courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128 (9th Cir. 2017), *quoting*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015). Manageability is just a factor to be considered when determining if the class device is superior to a multitude of individual actions. *Id*.

Because common issues predominate and individualized issues are absent or can be resolved by simple reference to phone bills, alleged written consents, or call

records, the trial of this action will be easily managed by the Court. As shown above in the class factor discussions, Plaintiff will present generalized evidence regarding the transmitting and content of Defendant's telemarketing calls. And they, of course, will have the opportunity to demonstrate that their common courses of conduct did not violate the law using equally common evidence.

To the extent some defense bar commentators have hoped that the Ninth Circuit in *Briseno* may have folded some small part of ascertainability analysis into manageability, we address it below out of an over-abundance of caution. The question, for those courts reading some remnant of ascertainability into manageability even after the Ninth Circuit expressly rejected ascertainability, is not whether the class members are known at the time of certification, but rather whether if it is administratively feasible to determine whether a particular person is a member of the class once a claim is made. *See, Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("Readily ascertainable" does not mean that plaintiffs must, at this stage, precisely be able to "identify every potential member of the class to meet the standard for ascertainability."); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 623 (S.D. Cal. 2015); *see also, Galvan v. KDI Distribuation Inc.*, 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011). "[T]here is no requirement that the identity of the class members should be . . . known at the time of certification." *Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *14 (C.D. Cal. Apr. 14, 2016) (citation omitted). In this case, the class definition requires a claimant to present a bill showing residential subscription, and there are complete call records, a sample of which has been produced for this motion to corroborate the fact a call was made, so realistically, determining the validity of a claim is relatively simple for an administrator.

Finally, regardless of discussions about the fully overruled "ascertainability" non-element in the Ninth Circuit, manageability is just a factor within the superiority analysis. Where the factors discussed above demonstrating the extreme

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

judicial efficiency of aggregating tens of thousands of potential small dollar value cases all of which were caused by the same common course of conduct which can be proved with common evidence, manageability is something of a non-issue. For these reasons, the manageability factor cannot weigh as heavily as the other superiority factors in the absence of evidence of extreme issues, of which there is none here.

## C.  The Court Should Appoint Prato & Reichman, APC As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

This was addressed under 'adequacy' above. To recap, Prato & Reichman, APC are subject matter experts and have previously been appointed class counsel. All have diligently prosecuted Plaintiff's claims and have devoted, and will continue to devote, ample time and resources to this litigation. [Prato Decl. ¶¶3-13; Reichman Decl. ¶¶3-15;]. Plaintiff's counsels have considerable experience with similar TCPA cases and experience with complex litigation and class action litigation. Accordingly, they should be appointed to serve as class counsel for the proposed class pursuant to Rule 23(g).

## D. The *Bristol-Myers* Decision Does Not Apply To Class Actions

Defense counsels have been trying to apply consideration of *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*BMS*") in class action cases for some time now. As this is a potential issue that Defendant

may raise in this case, Plaintiff will briefly address it at the outset. *BMS* did not involve a class action in federal court or even a federal statute. It involved a mass action with out-of-state defendants in California state court suing over California state laws. *BMS*, 137 S. Ct. at 1778. *BMS* expressly declined to address federal court jurisdiction and Rule 23 federal class actions which involved unnamed plaintiffs. Id. at 1783-84, and at 1789 n.4 (Sotomayor, J. dissenting). By its own reckoning, however, the Court's decision in *BMS* was narrow—nothing more than a "straightforward application . . . of settled principles of personal jurisdiction." Id. at 1783; see id. at 1781 ("Our settled principles regarding specific jurisdiction control this case."). And "the Court carefully limited its holding." *Molock v. Whole Foods Mkt. Grp.*, 952 F.3d 293, 296 (D.C. Cir. 2020) ("*Molock*"). Because the decision concerned "the due process limits on the exercise of specific jurisdiction by a State," the Court took pains to note, the opinion did not touch "on the exercise of personal jurisdiction by a federal court." *BMS*, 137 S. Ct. at 1777, *see also*, *id.* at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action."). The defense bar has since tried to extend *BMS* to class actions even though the jurisdictional requirements of named and unnamed class members under Rule 23 is long settled law. Because *BMS* has nothing to do with class action cases under Rule 23, and does not deal with a federal statute violation which applies nationwide, it is not binding precedent on any federal court as to jurisdiction in a Rule 23 case.

Nor does the logic of *BMS* regarding state court jurisdiction make any sense as to nationwide federal class action procedures, which are different from a mass action tort. It has long been settled practice that, when many people have a "common interest" in a dispute, courts may proceed even though a "number of those interested in the litigation" are not personally "within the jurisdiction" of the court. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). Nothing in the *BMS* ruling addressed this long-standing rule. Indeed, since 1940 federal courts have probably

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

heard and resolved thousands of Rule 23 nationwide class actions under federal statutes, and prior to *BMS*, none concern themselves with personal jurisdiction over unnamed class members. Absent class members are not "parties" for personal-jurisdiction purposes and are not parties in any formal sense, and they have not been treated as the functional equivalent of parties for most purposes, "including jurisdictional ones." *Molock*, 952 F.3d at 297. For example, they "are not considered parties for the purposes of the complete diversity requirement in suits under 28 U.S.C. § 1332." *Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002); *see*, *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Nor are they considered parties for purposes of a magistrate's consent jurisdiction to enter judgment under 28 U.S.C. § 636(c). *See*, *Koby v. ARS Nat'lServs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017). Indeed, no source of binding law has ever been interpreted to require federal courts to engage in a separate personal-jurisdiction inquiry as to unnamed class members.

Furthermore, the *BMS* case concerns due process under the Fourteenth Amendment (applicable for mass tort state claims), not the Fifth Amendment, which would be applicable in a class action. It is explicit that "The Constitution does not require the federal districts to follow state boundaries." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) ("*Vigman*"). Were it otherwise, Congress would have been unable to authorize nationwide service of process via federal statute, which it has done for decades. *See*, *e.g.*, *Go-Video Inc. v. Akai Electric Co.*, 885 F.2d 1406, 1414-15 (9th Cir. 1989); *Vigman*, 764 F.2d at 1315.

Finally, the weight of decisional authority has declined to extend the *BMS* holding to unnamed class members in Rule 23 cases. The Seventh Circuit is the only circuit court to rule squarely on point. In *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), the Seventh Circuit considered argument about extending BMS to federal class actions and for many of the reasons above ruled, "the named representatives must be able to demonstrate either general or specific personal

MEMORANDUM OF POINTS & AUTHORITES – CLASS CERTIFICATION MOTION

jurisdiction, but the unnamed class members are not required to do so." In *Micheal Knotts v Nissan North America, Inc*., 346 F.Supp.3d 1310, 1331 (D. Minn., Oct. 10, 2018), Judge Susan Nelson surveyed the various post-*BMS* rulings and stated, "[defendant] relies upon a line of cases from the Northern District of Illinois . . . Outside of that district court, however, very few courts have extended *BMS* to unnamed class members, and one of the cases addressed the issue only briefly in a footnote." And, the District Court for the Northern District of California has held that when a class action is based on federal question jurisdiction, *BMS* is inapplicable. *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018) ("[W]here a federal court presides over litigation involving a federal question, the due process analysis does not incorporate the interstate sovereignty concerns that animated Bristol-Myers and which may be 'decisive' in a state court's analysis.") (District Judge Edward M. Chen). And, after its *BMS* decision, in *Mallory v. Norfolk Southern Railway Co*., 143 S. Ct. 2028 (2023), the Supreme Court held that an out-of-state company's registration with a state's secretary of state to do business amounted to that company's consent to the state's jurisdiction. As the Court observed, "Our precedents have recognized, too, that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." *Id*. at 2039. Indeed, *Mallory* distinguished *BMS*'s due process concerns, "when an out-of-state defendant submits to suit in the forum State." *Id*. at 2043. So, a heavy weight of decisional authority runs against the notion of extending *BMS* from state court mass actions to federal court, federal statute class actions.

## IV. POTENTIAL FURTHER SUBCLASSING

The class proposed herein is not exclusive and Plaintiffs argue in the alternative that sub-classing might be useful. Sub-classing could also be used to

deal with any consent issues raised by Defendant similar to the sub-class approved in *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 930-31 (9th Cir. 2018).

## V.  CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied. Plaintiff respectfully request that the Court enter an order certifying the proposed classes pursuant to Rule 23(b)(3), appointing Prato & Reichman, APC, as class counsel, and ordering that Plaintiff submit a proposed notice plan and form of notice within a reasonable time following entry of this order.

DATED: December 16, 2024                    **PRATO & REICHMAN, APC**


/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
Brian Clark
and the putative class.