TROUTMAN AMIN, LLP
Eric J. Troutman (State Bar # 229263)
Puja Amin (State Bar # 299547)
Brittany A. Andres (State Bar # 340856)
400 Spectrum Center Drive, Suite 1550
Irvine, California 92618
Telephone: +1 949 350 3663
Facsimile: +1 949 203 8689
troutman@troutmanamin.com
amin@troutmanamin.com
brittany@troutmanamin.com

Attorneys for Defendant
VIA RENEWABLES, INC., F/K/A SPARK ENERGY, INC.



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN CLARK, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

VIA RENEWABLES, INC., F/K/A SPARK ENERGY, INC.,

Defendants.

Case No. 3:24-cv-00568-JSC

**DEFENDANT VIA RENEWABLES, INC. F/K/A SPARK ENERGY, INC.'S OPPOSITION TO PLAINTIFF BRIAN CLARK'S MOTION FOR CLASS CERTIFICATION**

Hearing: March 6, 2025
Time: 10:00 a.m.
Courtroom: 8

Hon. Judge Jacqueline Scott Corley

Defendant Via Renewables, Inc. f/k/a Spark Energy, Inc. ("Defendant") respectfully submits this Opposition to Plaintiff Brian Clark's ("Plaintiff") Motion for Class Certification.

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

# TABLE OF CONTENTS

I. INTRODUCTION .......... 9

II. FACTUAL BACKGROUND .......... 10

A. Defendant Does Not Make Any Kind of Calls Directly or Indirectly. .......... 10

B. Spark Energy is a Provider of High-Quality Electrical Services that Only Contacts Consumers Who Expressly Consent to Receive Contact. .......... 10

C. Plaintiff Requests Contact from Spark Energy and Receives Calls From Energy BPO as a Result. .......... 11

III. PLAINTIFF HAS FAILED TO DEMONSTRATE NUMEROSITY AS HIS FACTUAL SHOWING ADDRESSES ONLY SOME BUT NOT ALL OF THE ELEMENTS OF HIS CLASS DEFINITIONS .......... 12

A. Plaintiff Fails to Demonstrate Numerosity as to his DNC Subclass. .......... 12

B. Plaintiff Fails to Demonstrate Numerosity as to his Prerecord Subclass. .......... 16

IV. PLAINTIFF IS NOT TYPICAL/ADEQUATE TO REPRESENT THE CLASSES OWING TO HIS UNIQUELY WEAK FACTUAL POSITION .......... 17

A. Plaintiff's TCPA Claim is Subject to a Uniquely Powerful Express Consent Defense that Does Not Impact Other Class Members. .......... 18

B. Plaintiff's Misrepresentation of Notes and Failure to Submit his Devices to Forensic Examination Also Render Him Inadequate. .......... 21

V. PLAINTIFF HAS FAILED TO SHOW EVEN BASIC COMMONALITY BEYOND THE FAILSAFE ELEMENTS OF HIS CLASSES .......... 23

VI. INDIVIDUALIZED ISSUES PREDOMINATE TO THE EXTENT THE FAILSAFE CLASS IS REDEFINED .......... 27

A. Whether Class Members Consented to the Calls is an Individualized Issue. .......... 27

B. Whether Class Members' Phone Numbers are Residential is an Individualized Issue. .......... 29

C. Agency is also an Individualized Issue. .......... 30

VII. CONCLUSION .......... 31

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

**TABLE OF AUTHORITIES**

**Cases**

*Alaska v. Suburban Propane Gas Corp.*,
123 F.3d 1317 (9th Cir. 1997) .......... 19

*Alvarez v. Widnall,*
No. CIVSA96CA1167FB, 1998 WL 1782553 (W.D. Tex. Mar. 4, 1998) .......... 24

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 19

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) .......... 25

*Bailey v. Patterson*,
369 U.S. 31 (1962) .......... 21

*Baisden v. Credit Adjustments, Inc.*,
813 F.3d 338 (6th Cir. 2016) .......... 19, 20

*Banarji v. Wilshire Consumer Capital, LLC,*
2016 WL 595323 (S.D. Cal. Feb. 12, 2016) .......... 22

*Blackie v. Barrack,*
524 F.2d 891 (9th Cir. 1975) .......... 27

*Blair v. CBE Grp., Inc.,*
309 F.R.D. 621 (S.D. Cal. 2015) .......... 26

*Bridge v. Credit One Fin.,*
294 F. Supp. 3d 1019 (D. Nev. 2018) .......... 26

*Brown v. NFL Players Ass'n*,
281 F.R.D. 437 (C.D. Cal. 2012) .......... 26, 27, 31

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

*Burk v. Direct Energy, LP*,
No. 4:19-CV-663, 2021 WL 4267146 (S.D. Tex. Sept. 20, 2021) ........................................ 29

*Chinitz v. NRT W., Inc.*,
No. 18-CV-06100-NC, 2019 WL 4142044 (N.D. Cal. Aug. 30, 2019) .................................. 32

*Connelly v. Hilton Grand Vacations Co., LLC*,
294 F.R.D. 574 (S.D. Cal. 2013) ........................................................................ 24, 25, 28

*Derval v. Xaler,*
No. 219CV01881ODWJEMX, 2020 WL 430781 (C.D. Cal. Jan. 28, 2020) ... 10, 14, 15, 16, 18

*Diacakis v. Comcast Corp.*,
No. C 11-3002 SBA, 2013 WL 1878921 (N.D. Cal. May 3, 2013) ........................................ 15

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ........................................................................................ 25, 27

*Floyd v. Saratoga Diagnostics, Inc.*,
No. 20-CV-01520-LHK, 2021 WL 2139343 (N.D. Cal. May 26, 2021) ................................ 13

*Fober v. Mgmt. & Tech. Consultants, LLC*,
886 F.3d 789 (9th Cir. 2018) ............................................................................................ 20

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990) ............................................................................................ 21

*Gene And Gene LLC v. BioPay LLC,*
541 F.3d 318 (5th Cir. 2008) ............................................................................................ 26

*Genenbacher v. CenturyTel Fiber Co. II,*
244 F.R.D. 485 (C.D. Ill. 2007) ................................................................................... 27, 28

*Greene v. Select Funding, LLC,*
No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) .......................... 25

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

*Gustafson v. Goodman Mfg. Co. LP*,
No. CV-13-08274-PCT-JAT, 2016 WL 1029333 (D. Ariz. Mar. 14, 2016) ........................... 21

*Hanon v. Dataproducts Corp*.,
976 F.2d 497 (9th Cir. 1992)................................................................................ 18, 19, 21, 22

*Hicks v. Client Servs., Inc.*,
No. 07cv61822, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008)............................................... 26

*Hill v. Universal Fid., L.P.*,
No. 5:16-CV-02957, 2018 WL 2291421 (N.D. Ohio Apr. 26, 2018)..................................... 19

*Hirsch v. USHealth Advisors, LLC*,
337 F.R.D. 118 (N.D. Tex. 2020)....................................................................... 28, 30, 31, 32

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013)................................................................................ 25

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014)......................................................................................... 18

*Jaroslawicz v. Safety Kleen Corp*.,
151 F.R.D. 324 (N.D. Ill. 1993) ..................................................................................... 22, 23

*Jeffrey Katz Chiropratic, Inc. v. Diamond Respiratory Care, Inc.*,
340 F.R.D. 383 (N.D. Cal. 2021) ......................................................................................... 28

*Jones v. Royal Admin. Svcs., Inc*.,
887 F.3d 443 (9th Cir. 2018)............................................................................................ 31, 32

*Kamar v. RadioShack Corp*.,
375 Fed. Appx. 734 (9th Cir. 2010) ................................................................................ 25, 27

*Legg v. PTZ Ins. Agency, Ltd*.,
321 F.R.D. 572 (N.D. Ill. 2017) ........................................................................................... 26

*Lightbourne v. Printroom Inc.*,
307 F.R.D. 593 (C.D. Cal. 2015) .......... 22

*Mattson v. New Penn Fin., LLC*,
No. 3:18-CV-00990-YY, 2023 WL 8452659 (D. Or. Oct. 12, 2023) .......... 30

*Mattson v. New Penn Fin., LLC*,
No. 3:18-CV-00990-YY, 2024 WL 21568 (D. Or. Jan. 2, 2024) .......... 30

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 13

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020) .......... 16, 18

*Nghiem v. Dick's Sporting Goods, Inc.*,
318 F.R.D. 375 (C.D. Cal. 2016) .......... 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .......... 13

*Olney v. Job.com, Inc.*,
No. 1:12-CV-01724-LJO, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013) .......... 10

*Payne v. Sieva Networks, Inc.*,
347 F.R.D. 224 (N.D. Cal. 2024) .......... 25, 26, 31

*Quinto v. JPMorgan Chase Bank*,
No. 11-CV-02920-LHK, 2011 WL 6002599 (N.D. Cal. Nov. 30, 2011) .......... 25

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
646 F.3d 347 (6th Cir. 2011) .......... 10, 11, 27

*Russell v. Forster & Garbus, LLP*,
No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020) .......... 23

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

*Sapan v. Veritas Funding, LLC,*
No. SACV2300468CJCADSX, 2023 WL 6370223 (C.D. Cal. July 28, 2023) ................. 21, 22

*Sapan v. Yelp, Inc.*,
No. 3:17-CV-03240-JD, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) ................ 10, 16, 18, 26

*Sarmiento v. Sealy, Inc.*,
No. 18-CV-01990-JST, 2020 WL 4458915 (N.D. Cal. May 27, 2020) .................................. 13

*Sarmiento v. Sealy, Inc.*,
No. 21-16562, 2022 WL 4008004 (9th Cir. Sept. 2, 2022) ..................................................... 13

*Saulsberry v. Meridian Fin. Servs., Inc.*,
No. CV146256JGBJPRX, 2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ............................... 22

*Schwartz v. Upper Deck Co.,*
183 F.R.D. 672 (S.D. Cal. 1999) ............................................................................................ 18

*Silver v. Pennsylvania Higher Educ. Assistance Agency*,
No. 14-CV-00652-PJH, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ........................... 10, 15, 18

*Simon v. Healthways, Inc*.,
No. CV1408022BROJCX, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015) ............................ 26

*Sliwa v. Bright House Networks, LLC*,
333 F.R.D. 255 (M.D. Fla. 2019) ........................................................................... 15, 16, 18

*Smith v. ExamWorks, LLC*,
No. 8:21-CV-02746-PX, 2024 WL 622102 (D. Md. Feb. 14, 2024) ................................ 19, 20

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir.2003) ............................................................................................. 24, 25

*Stevens-Bratton v. TruGreen, Inc.,*
437 F. Supp. 3d 648 (W.D. Tenn. 2020) ................................................................................ 30

*Stiner v. Brookdale Senior Living, Inc.*,
665 F. Supp. 3d 1150 (N.D. Cal. 2023)........................................................................ 25

*Taylor v. Universal Auto Grp. I, Inc.*,
No. 3:13-CV-05245-KLS, 2014 WL 6654270 (W.D. Wash. Nov. 24, 2014) ......................... 27

*Thrower v. Citizens Disability, LLC*,
No. CV 20-10285-GAO, 2022 WL 3754737 (D. Mass. Aug. 30, 2022) ................................ 20

*Victorino v. FCA US LLC*,
326 F.R.D. 282 (S.D. Cal. 2018)................................................................................ 25

*Vizcarra v. Unilever United States, Inc.*,
No. 4:20-CV-02777 YGR, 2023 WL 2364736 (N.D. Cal. Feb. 24, 2023) .............................. 27

*W. Radio Servs. Co. v. Glickman*,
123 F.3d 1189 (9th Cir. 1997)................................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................................. 24

*Wiley v. Am. Fin. Network, Inc.*,
No. SACV 22-00244-CJC (DFMX), 2023 WL 4681538 (C.D. Cal. July 3, 2023) 18, 19, 21, 22

**Statutes**

47 C.F.R. § 64.1200 ................................................................................................. 19

47 U.S.C. § 227 ........................................................................................................ 19

**Other Authorities**

*In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling*,
CG Docket No. 02-278 (March 27, 2014)........................................................................ 20

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act*,
30 FCC Rcd. 7961 (July 10, 2015)................................................................................ 20

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

## I. INTRODUCTION

The evidence at trial in this case will demonstrate that in late February and March, 2023 Plaintiff was upset with his home energy provider. As a result, on March 3, 2023, Plaintiff filled out a webform on bestamericansavings.com seeking information regarding a new energy provider. That webform provided express written consent to various entities—including a subsidiary of Defendant—to make calls to Plaintiff's cell phone number for the purpose of discussing energy products. Plaintiff subsequently received precisely such calls but has, nonetheless, elected to bring a meritless Telephone Consumer Protection Act ("TCPA") class action against Defendant.

In seeking certification, Plaintiff has defined two classes that include individuals who look nothing like him. The classes Plaintiff seeks to represent include only individuals who *did not* provide express written consent. Yet Plaintiff presents no evidence Defendant placed any calls to such individuals—and it did not do so. So, Plaintiff has not demonstrated any class members exist. As a result, not only is Plaintiff inadequate to represent the classes he has defined, he has failed to meet his basic burden of proving numerosity. *See Derval v. Xaler,* No. 219CV01881ODWJEMX, 2020 WL 430781, at *3 (C.D. Cal. Jan. 28, 2020); *Silver v. Pennsylvania Higher Educ. Assistance Agency*, No. 14-CV-00652-PJH, 2020 WL 607054, at *8 (N.D. Cal. Feb. 7, 2020); *Sapan v. Yelp, Inc.,* No. 3:17-CV-03240-JD, 2021 WL 5302908, at *2 (N.D. Cal. Nov. 15, 2021).

Equally as important, Plaintiff's classes are defined based upon the *merits* of class member claims and not based on objective criteria. Thus, individuals determined to be in the class will have already prevailed on significant portions of their claims—and there is no way to identify such individuals except by reference to the strength of their claims. These definitions, therefore, constitute classic "failsafe" class definitions that can never be certified. *See Olney v. Job.com, Inc.,* No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (agreeing with the defendant that, as originally proposed, the plaintiff's class was a fail-safe class and consequently, redefining the class); *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 339 (6th Cir. 2011) (affirming "district court's order decertifying the plaintiffs' class action on the grounds that the proposed class definition included only those who were 'entitled to relief,' and

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

was therefore an impermissible fail-safe").

Plaintiff has elected to define his classes based upon the merits of class member claims because he has no objective basis to seek certification because individualized issues are everywhere to be found. Every call at issue in this case was made with express written consent—so there are seemingly no class members. To the extent Plaintiff contends express consent provided by certain class members was invalid, however, individualized inquiries will be needed to determine which of thousands of consent submissions on dozens of different websites were improper (if any.) Individualized testimony from each class member may also be necessary—just as it will be for the named Plaintiff to the extent he contends his consent was invalid. So, too, with respect to determining whether a phone number was used for residential purposes by class members. Last, although Plaintiff purports to be representing classes of individuals called by Defendant and *any* third-party agent calling on its behalf—Plaintiff has not identified *any* such third-party, much less explained how issues of vicarious liability could be addressed on common evidence for each of these parties (whoever they are.)

At bottom Plaintiff's individual claim is factually meritless and his certification effort is legally frivolous. Certification should be swiftly denied.

## II. FACTUAL BACKGROUND

### A. Defendant Does Not Make Any Kind of Calls Directly or Indirectly.

Defendant is a holding company that does not make phone calls, supply energy products, or have any operations pertinent to this case. *See* Declaration of Julio Astorga ("Astorga Decl."), at ¶ 3.

It appears Defendant was sued in error and should be substituted for a different party, presumably the California-based operating subsidiary of Defendant, Spark Energy Gas, LLC ("Spark Energy").

### B. Spark Energy is a Provider of High-Quality Electrical Services that Only Contacts Consumers Who Expressly Consent to Receive Contact.

Spark Energy is an energy retailer offering services in the state of California. Spark Energy's family of brands offers high-quality home electrical power derived from mostly

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

renewable resources, such as solar and wind. It is an alternative provider to companies like PG&E that operate primarily using traditional fossil fuels. Astorga Decl., at ¶ 4.

Spark Energy does not engage in cold call robocalling of any kind, and it does not allow any vendors it works with to engage in such activity. *Id.,* at ¶ 5. Spark Energy also does not make cold calls to numbers on the National Do-Not-Call ("DNC") Registry and does not permit any vendor it works with to engage in that activity. *Id.,* at ¶ 6.

Spark Energy does, however, work with certain vendors to make calls to consumers who have provided express written consent to be contacted by Spark Energy. Spark Energy works with two types of vendors to make such calls. *Id.,* at ¶ 7.

First, Spark Energy works with vendors who operate websites, inviting consumers to fill out forms and request to be contacted by Spark Energy to learn about energy offers and services. *Id.,* at ¶ 8. These vendors are trusted experts in the field of identifying consumers interested in Spark Energy's products and services and Spark Energy trusts these companies to provide only valid written consent from real consumers. *Id.* Spark Energy's contracts with these vendors require valid express written consent be provided. *Id.,* at ¶ 9. These vendors do not just work for Spark Energy but with any number of other companies they also generate consumer leads for. *Id.,* at ¶ 10. As such, these vendors use hundreds of different URLs to generate the consent forms sent to Spark Energy. *Id.* Inbounds.com is one such lead vendor. *Id.* Bestamericansavings.com is one such URL. *Id.*

The other type of vendor Spark Energy works with are call center vendors. *Id.,* at ¶ 12. These vendors may make calls to consumers who have consented to receive calls from Spark Energy and then transfer consumers who are interested in further information to Spark Energy for assistance. *Id.* One such vendor is Energy BPO, Corp. ("Energy BPO"). *Id.,* at ¶ 13.

### C. Plaintiff Requests Contact from Spark Energy and Receives Calls From Energy BPO as a Result.

From February 23, 2023 through March 22, 2023, Plaintiff was in a dispute with his home energy provider, Tesla. *See* Declaration of Eric J. Troutman ("Troutman Decl."), at ¶ 4 (Clark Depo Tr. at 169:19-172:15). He spent hours on the phone with customer services and exchanged

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

over a dozen calls with Tesla in a period of days. *See id.*

During this precise timeframe, on March 3, 2023, a webform submission was submitted on bestamericansavings.com in Plaintiff's name. The webform submission included his correct phone number and date of birth, as well as his full name. *See id.,* at ¶ 4 (Clark Depo. Tr. at 106:3-108:20). The webform submission expressed interest in offers from Spark Energy—a provider of home energy products, the exact product Plaintiff was seemingly in the market for given his dispute with Tesla. Astorga Decl., at ¶¶ 11, 16.

As a result of the webform submission, Energy BPO made a series of calls to Plaintiff relying on his express written consent. *Id.,* at ¶ 16. Plaintiff never asked for the calls to stop although he called the phone number three times provided in the voicemail Energy BPO left. *See* Troutman Decl., at ¶ 4 (Clark Depo. Tr. at 36:9-37:24).

## III. PLAINTIFF HAS FAILED TO DEMONSTRATE NUMEROSITY AS HIS FACTUAL SHOWING ADDRESSES ONLY SOME BUT NOT ALL OF THE ELEMENTS OF HIS CLASS DEFINITIONS

Plaintiff has the burden of demonstrating numerosity of the class through admissible evidence. *See Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012), overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ("Rule 23(a) requires that plaintiffs demonstrate numerosity…in order to maintain a class action."); *Sarmiento v. Sealy, Inc*., No. 18-CV-01990-JST, 2020 WL 4458915, at *5 (N.D. Cal. May 27, 2020), aff'd, No. 21-16562, 2022 WL 4008004 (9th Cir. Sept. 2, 2022) ("the burden remains on Plaintiffs to show that [numerosity] is satisfied"); *Floyd v. Saratoga Diagnostics, Inc.,* No. 20-CV-01520-LHK, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) (a "Plaintiff must provide specific evidence of numerosity beyond a mere assertion that hundreds if not thousands of putative class members exist.").

Plaintiff seeks to certify two classes: (1) a DNC Subclass, and (2) a Prerecord Subclass. He has shown numerosity as to neither.

### A. Plaintiff Fails to Demonstrate Numerosity as to his DNC Subclass.

Plaintiff's DNC Subclass is defined as: "All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year ***without prior express written consent from the called party or an 'existing business relationship'*** at any time from January 30, 2020 to the present, including up to and through trial." Mot. at 4 (emphasis added).

Plaintiff asserts his expert has identified 18,641 person's numbers that were on the national DNC list and yet received two calls within the class period. *See* Mot. at 7. To begin with this count rests on a review of inadmissible evidence—Plaintiff failed to introduce the underlying data sets into evidence and they have not been authenticated or established to be valid business records.[1] Certification is properly denied on this basis alone.

Even assuming the expert's opinion was admissible, however, Plaintiff has still introduced no evidence of the number of DNC Subclass members. This is so because in order to be a member of the class, an individual must have received those calls without providing consent. *See* Mot. at 4 (DNC Subclass defined as: "All persons…to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year ***without prior express written consent from the called party or an 'existing business relationship'*** at any time from January 30, 2020 to the present, including up to and through trial). Class members must also have received calls in the absence of an established business relationship. *See id.* Yet Plaintiff's expert made no determination as to whether or not consent was provided for the calls placed to those 18,641 persons and has made no effort to determine whether those individuals were existing customers of Defendant. *See* ECF No. 37-8.[2] And "[e]vidence of possible class membership is not evidence of actual numerosity." *Derval*, 2020 WL 430781, at *3 (finding no numerosity where

---

[1] Pursuant to L.R. 7-3, Defendant hereby objects to the admission of any evidence related to calling data as [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 69:24-70:16, 74:5-75:5, 80:21-83:23, 85:14-23). Thus, all such evidence related to class membership counts must be excluded.

[2] [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 9:16-10:9; 17:8-18:25).

purported evidence of reviews was not evidence that each customer received an unwanted text message). *See Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273 (M.D. Fla. 2019) (finding the "Plaintiff has failed to carry his burden of establishing numerosity. Although Plaintiff presumes that the list of 9,406 cell phone numbers identified in Mr. Biggerstaff's report belong to non-customers, Plaintiff has failed to establish that any of the cell phone numbers on that list *actually* belong to non-customers.") (emphasis in original), *cf. Diacakis v. Comcast Corp.,* No. C 11-3002 SBA, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013) (finding the plaintiff failed to meet numerosity requirement based on the fact that there were 649,576 subscribers, where plaintiff did not offer evidence regarding the number of those subscribers who were allegedly misled by defendant).

Many TCPA cases have denied certification in similar circumstances where numerosity simply could not be shown. For instance, in *Silver*, "[r]ather than satisfy his evidentiary burden, plaintiff hinge[d] his numerosity showing upon 'common sense assumptions'". *Silver*, 2020 WL 607054, at *8. However, the court stated:

> While the court acknowledges that it may make "common-sense assumptions and reasonable inferences" when analyzing numerosity, defendant proffered evidence that it maintained a practice during the relevant period to obtain and then record a borrower's consent to call him using an automated or prerecorded system. Such practice (which is supported by evidence) instead leads to the reasonable inference that defendant would not call cellphones using the challenged system absent consent, which thereby undermines the validity of plaintiff's common-sense assumption.
>
> …
>
> Plaintiff's remaining response on this issue—namely, that he need not "actually identify class members at the certification stage," Dkt. 87 at 10—misses the point. As discussed above, plaintiff is correct that the Ninth Circuit recognizes that an ascertainability showing is not required under Rule 23(a). However, such recognition does not relieve plaintiff from satisfying Rule 23(a)(1)'s numerosity requirement. Because plaintiff failed to do so, the court denies his motion on this ground alone.

*Id.* (internal citations omitted). *See e.g., Sliwa*, 333 F.R.D. at 273; *Derval*, 2020 WL 430781, at *3 (denying class certification in TCPA case where "the Reviews support only that Xaler had



TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

seventy-eight customers. The Reviews do not support that any of those customers received unwanted text messages, revoked consent to receive messages, or continued to receive messages after revocation.").

Moreover, the case of *Sapan* is particularly illustrative. There, the plaintiff argued numerosity was met merely because a large number of phone calls were attempted. *Sapan*, 2021 WL 5302908, at *2. Yet, the plaintiff failed to demonstrate the calls were made to members of the class as it was actually defined. *Id.,* at *3. As a result, the court denied certification on numerosity grounds.[3]

Similarly, in *Molinari v. Fin. Asset Mgmt. Sys., Inc.,* No. 18 C 1526, 2020 WL 4345418, at *4 (N.D. Ill. July 29, 2020), the plaintiff contended that numerosity existed because spreadsheets identified "10,000 unique, skip-traced cellular numbers assigned to Northern District of Illinois area codes and the VoApps Spreadsheets show[ed] that VoApps successfully transmit[ted] pre-recorded messages to these skip-traced cellular numbers." *Molinari*, 2020 WL 4345418, at *4. But the court noted, the plaintiff "cannot rely upon 'common sense' to argue that the numerosity requirement is satisfied." *Id.,* at *5. As such, the court found the plaintiff to meet his burden because he failed to put forth *evidence* in demonstrating numerosity. *Id.*

As in all of these cases, Plaintiff has presented only (inadmissible) evidence of a *portion* of his class definition. He has shown—at best— that over 18,000 individuals received calls although they may have been on the DNC list. But he has made no showing, whatsoever, that these individuals were called without consent or without an established business relationship—each a component of his class definition. As such, Plaintiff has made no evidentiary showing that numerosity is present.

Although it is Plaintiff's burden to prove numerosity—and not Defendant's burden to refute it—Defendant's evidence establishes all calls made to class members were made with consent. Indeed, all calls made by Energy BPO were made with consent as a matter of

---

[3] Notably, the Plaintiff in *Sapan* also relied upon a report by expert Anya Verkhovskaya, the same expert used in this case by Plaintiff. The *Sapan* court determined the expert's "proposed reverse-append method is also of questionable reliability and validity." *Sapan*, 2021 WL 5302908, at *3.

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

requirement—calls could not have been placed by Energy BPO unless a consent record was first received by Defendant, stored in its account with ActiveProspect, and then transferred to Energy BPO. Astorga Decl., at ¶ 13. Only such calls were permitted by Defendant. *Id.,* at ¶¶ 5-9.

Not only has Plaintiff failed to meet Federal Rule of Civil Procedure ("Rule") 23's numerosity requirement in his present motion, therefore, the evidence establishes he could never meet such requirement. As such, certification must be denied.[4]

**B. Plaintiff Fails to Demonstrate Numerosity as to his Prerecord Subclass.**

The same issues arise with respect to the Prerecord Subclass and certification of this subclass must also be denied for Plaintiff's failure to establish numerosity.

Plaintiff's Prerecord Subclass is defined as: "All persons and entities located within the United States of America to whose residential telephone line Defendant and/or its agents transmitted a call using a prerecorded voice ***without prior express written consent*** from the called party at any time from January 30, 2020 to the present, including up to and through trial." Mot. at 4 (emphasis added).

All Plaintiff provides in support of his numerosity showing on this subclass is the assertion "there are thousands, if not more such prerecorded voicemail calls." Mot. at 8. There are several problems with this assertion, however.

First, the data set Plaintiff references pertains to voicemails, whereas the class definition references "a call using a prerecorded voice." *Id.* at 4 ("All persons and entities located within the United States of America to whose residential telephone line Defendant and/or its agents transmitted ***a call using a prerecorded voice***…") (emphasis added). [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 10:10-24).[5]

---

[4] [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 8:3-16).

[5] Whether a prerecorded voicemail constitutes a "call using a prerecorded voice" is disputed, but constitutes a substantive issue not properly determined at certification. For now, the point is merely

Even more importantly, as with the DNC Subclass, a critical component of the Prerecord Subclass definition is that the calls were placed without consent. *See* Mot. at 4 ("All persons and entities located within the United States of America to whose residential telephone line Defendant and/or its agents transmitted a call using a prerecorded voice ***without prior express written consent from the called party***…") (emphasis added). [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 10:25-11:11). And the evidence is that no such calls were made. Astorga Decl., at ¶¶ 5-9, 13. Hence Plaintiff has failed to meet his burden of demonstrating numerosity as to the Prerecord Subclass.

As set forth above, courts properly deny certification where the plaintiff simply asks the court to *infer* numerosity rather than point to actual *evidence*. *See Silver*, 2020 WL 607054; *Sliwa*, 333 F.R.D. at 273; *Derval*, 2020 WL 430781, at *3; *Sapan*, 2021 WL 5302908, at *2; *Molinari*, 2020 WL 4345418, at *4. "Although the Court need only make a 'reasonable judgment' based on Plaintiffs' pleadings and supporting evidence, '[r]easonable judgments cannot be made out of thin air; sufficient information to make such a judgment is a required preliminary step.'" *Derval*, 2020 WL 430781, at *3 (quoting *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 681 (S.D. Cal. 1999)). And as with the DNC Subclass, Plaintiff has presented no evidence as to the number of Prerecord Subclass members who received calls without express written consent.

As such, certification of the Prerecord Subclass must be denied.

## IV. <u>PLAINTIFF IS NOT TYPICAL/ADEQUATE TO REPRESENT THE CLASSES OWING TO HIS UNIQUELY WEAK FACTUAL POSITION</u>

Plaintiff has the burden of demonstrating he is an adequate class representative. *See Nghiem v. Dick's Sporting Goods, Inc.,* 318 F.R.D. 375, 383 (C.D. Cal. 2016) (stating a plaintiff must establish his adequacy to represent a class); *In re Kosmos Energy Ltd. Sec. Litig.,* 299 F.R.D. 133, 150 (N.D. Tex. 2014) ("adequacy is the plaintiff's burden to prove—not the defendant's burden to disprove."). Plaintiff has not carried this burden.

The purpose of Rule 23's typicality and adequacy requirements is to ensure that the

---

that Plaintiff has failed to demonstrate numerosity because he has not shown any prerecorded voicemails were left, even assuming his theory that prerecorded voicemails are actionable is correct.



TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

plaintiff's interests align with the class's interests. *Wiley v. Am. Fin. Network, Inc.,* No. SACV 22-00244-CJC (DFMX), 2023 WL 4681538, at *2 (C.D. Cal. July 3, 2023) (citing *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (explaining that "both [requirements] look to the potential for conflicts in the class")). Typicality and adequacy are not met, and class certification is not appropriate, when there are issues and defenses unique to the named plaintiff's circumstances that could "preoccup[y]" the named plaintiff and "skew the focus of the litigation." *Alaska v. Suburban Propane Gas Corp*., 123 F.3d 1317, 1321 (9th Cir. 1997); *see Hanon,* 976 F.2d at 508 ("A named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it" or when issues or defenses unique to the named plaintiff "threaten to become the focus of the litigation") (cleaned up).

Plaintiff is not adequate to represent the classes for two reasons. First, a unique defense disqualifies him. Second, Plaintiff claims to have taken careful notes regarding his calls with Defendant, yet he apparently never took such notes. That failure coupled with his delay to submit to a forensic review of his devices confirms his inadequacy to represent the class.

**A. Plaintiff's TCPA Claim is Subject to a Uniquely Powerful Express Consent Defense that Does Not Impact Other Class Members.**

The TCPA allows calls to be made—including via prerecorded voice messages and to numbers on the DNC—where prior express written consent has first been obtained. *See* 47 U.S.C. § 227(b) (exempting artificial or prerecorded voice calls where prior express consent of the called party is obtained); 47 C.F.R. § 64.1200(c), (f)(15) (exempting calls made to phone numbers on the DNC registry where the person's prior express invitation or permission is obtained). Such consent can be submitted on a website and transferred to a caller from an intermediary. *See Hill v. Universal Fid., L.P.,* No. 5:16-CV-02957, 2018 WL 2291421, at *7 (N.D. Ohio Apr. 26, 2018) ("under the TCPA, a caller may obtain the 'consumer's prior express consent through an intermediary.'") (quoting *Baisden v. Credit Adjustments, Inc*., 813 F.3d 338, 343 (6th Cir. 2016)); *Smith v. ExamWorks, LLC*, No. 8:21-CV-02746-PX, 2024 WL 622102, at *4 (D. Md. Feb. 14,

2024) (same). Indeed, the FCC has expressly ruled that "the TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act*, 30 FCC Rcd. 7961, 7990–91 (July 10, 2015). Therefore, "a party that receives an individual's phone number indirectly may nevertheless have consent to call that individual." *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018). *See e.g., In re GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling,* CG Docket No. 02-278, FCC 14-33 (March 27, 2014) (stating that "GroupMe may rely on consent provided through an intermediary…"); *Thrower v. Citizens Disability, LLC*, No. CV 20-10285-GAO, 2022 WL 3754737, at *5 (D. Mass. Aug. 30, 2022) (recognizing that consent may be obtained from a lead generator website).

Plaintiff contends he did not provide express written consent to receive the calls at issue from Defendant. *See* Mot. at 10 n.6 ("Mr. Clark contends that he never gave consent to the Defendant"). But the jury could easily determine he is misremembering.

The calls at issue were placed as a result of a webform submission on bestamericansavings.com. Astorga Decl., at ¶ 16. The website offers discount offers on, amongst other things, the services of energy retailers like Defendant. *Id.,* at ¶ 11.

On March 3, 2023, Defendant received a webform submission purporting to be in the name of Plaintiff. *Id.,* at ¶ 16. As a result of that submission, Defendant transmitted the lead record to Energy BPO that made the challenged calls to Plaintiff. *Id.*

While Plaintiff claims he did not fill out the form at issue, at deposition he was forced to concede he was unhappy with his home energy provider during the precise timeframe the website submission at issue was made. *See* Troutman Decl., at ¶ 4 (Clark Depo. Tr. at 176:11-15). Indeed, just two days prior to the webform submission, he had been on the phone with Telsa Energy repeatedly due to energy problems at his home. *See id.,* at ¶ 4 (Clark Depo. Tr. at 169:19-172:11). He admitted he was angry with Tesla and in need of energy services during the precise timeframe the lead submission was made to Defendant. *See id.,* at ¶ 4 (Clark Depo. Tr. at 175:17-176:15).

Plaintiff, of course, contends it is a mere coincidence Defendant received a webform



TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

submission in his name at the very same time he was feuding with his energy retailer. *See id.,* at ¶ 4 (Clark Depo. Tr. at 172:13-173:8). A jury may easily conclude otherwise and determine he did, in fact, fill out the form—perhaps in a moment of extreme discontent with his-then energy provider Tesla—providing express written consent to receive the calls Energy BPO subsequently made. And if it does so, that means Plaintiff would no longer be a member of his own defined class—only individuals who had not provided express written consent can be a member of the class. *See Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962) ("[A plaintiff] cannot represent a class of whom they are not a part."); *Gustafson v. Goodman Mfg. Co. LP*, No. CV-13-08274-PCT-JAT, 2016 WL 1029333, at *6 (D. Ariz. Mar. 14, 2016) ("the named representative must be a 'member of the class.'").

Courts commonly deny certification in circumstances, such as these, where a unique defense will occupy a class representative's time and leave him unduly focused on the prosecution or defense of his own case. *See Hanon*, 976 F.2d at 508 (affirming denial of class certification where the plaintiff failed to meet the typicality requirement and stating "there is danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'") (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)); *Sapan v. Veritas Funding, LLC,* No. SACV2300468CJCADSX, 2023 WL 6370223, at *5-6 (C.D. Cal. July 28, 2023) (denying the plaintiff's motion for class certification finding the plaintiff atypical); *Wiley,* 2023 WL 4681538, at *3 (C.D. Cal. July 3, 2023) (same).

Plaintiff's situation here resembles the situations in both *Sapan* and *Wiley*. In *Sapan* and *Wiley,* the courts noted that while the plaintiffs claimed to have suffered an invasion of privacy from the defendant's calls, the evidence suggested they may have invited the communications—even despite their assertions that they did not consent or express interest in the services offered. *Sapan*, 2023 WL 6370223, at *4; *Wiley*, 2023 WL 4681538, at *3. As such, the courts stated "[t]he existence of this interpretation makes class certification inappropriate whether or not it is actually true that Plaintiff's words and conduct invited [] calls from Defendant." *Id.,* at *5; *Wiley*, 2023



TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

WL 4681538, at *5. *See e.g., Lightbourne v. Printroom Inc.,* 307 F.R.D. 593, 604 (C.D. Cal. 2015) ("Needless to say, a representative party is not typical of class members if he consented to the challenged activity."); *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV146256JGBJPRX, 2016 WL 3456939, at *12 (C.D. Cal. Apr. 14, 2016) (denying the plaintiff's motion for class certification in a TCPA case finding the plaintiff not typical because the plaintiff "initially provided prior consent" and finding the plaintiff no longer fell within the TCPA class definition).

Similarly, here, there is a significant issue as to whether Plaintiff provided his express written consent to be called. More specifically, Defendant presents evidence that Plaintiff was unhappy with his home energy provider during the precise timeframe the website submission at issue was made. *See* Troutman Decl., at ¶ 4 (Clark Depo. Tr. at 176:11-15). And just two days prior to the webform submission he had been on the phone with Telsa Energy repeatedly due to energy problems at his home. *See id.,* at ¶ 4 (Clark Depo. Tr. at 169:19-172:11). So, although Plaintiff claims that he did not invite or consent to the calls, Defendant presents evidence that demonstrates otherwise. "Because of [Plaintiff's] unique situation, it is predictable that a major focus of the litigation will be on a defense unique to [him]." *Hanon*, 976 F.2d at 509. For example, Defendant may likely call witnesses from Tesla Energy, "whose testimony regarding…their conversations with [Plaintiff] would relate to Plaintiff's specific circumstances and not to any other class members." *Wiley*, 2023 WL 4681538, at *3.

As such, this Court should deny Plaintiff's Motion because he is not typical or adequate to represent his classes as a "major focus of the litigation in this case will be on issues and defenses unique to Plaintiff, not on the class's claims." *Sapan*, 2023 WL 6370223, at *6. *See e.g., Banarji v. Wilshire Consumer Capital, LLC,* 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016) (denying class certification when "the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [the defendant's] arguments regarding [his] individual case," specifically with respect to whether the plaintiff gave consent to defendant calling him).

### B. Plaintiff's Misrepresentation of Notes and Failure to Submit his Devices to Forensic Examination Also Render Him Inadequate.

To be adequate, a class representative must be willing to do what is required to faithfully

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

represent the class in litigation. *See Jaroslawicz v. Safety Kleen Corp*., 151 F.R.D. 324, 328 (N.D. Ill. 1993) ("The second requirement is that the class representative must vigorously pursue the litigation on behalf of the class"); *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *4 (E.D.N.Y. Mar. 16, 2020) ("[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members. The Court may also consider (1) whether the proposed plaintiffs are credible; (2) whether the proposed plaintiffs have adequate knowledge of the case and are actively involved; and (3) whether the interest of the proposed plaintiffs are in conflict with those of the remainder of the class.") (internal citations and quotations omitted). Plaintiff has failed to do so here.

First, Plaintiff testified clearly and repeatedly at deposition that he had taken notes regarding the calls at issue in this case. *See* Troutman Decl., at ¶ 4 (Clark Depo. Tr. at 23:4-24:20, 77:2-12, 192:22-193:19). Both he and his counsel assured those notes would be produced. *See id.* (Clark Depo. Tr. at 27:23-28:17, 147:12-148:3, 156:18-20). Yet only a very small portion were. *See id.,* at ¶ 6. Turns out the notes Plaintiff believed he took regarding Spark Energy and testified repeatedly about never actually existed—an extremely damaging aboutface central to his claim. *See id.* ("After my client searched his notes, he realized he did not have call notes for the Via Renewables calls…").

Perhaps worse, Plaintiff has been unwilling to cooperate with basic defense requests in this case. As noted, there is a dispute as to whether Plaintiff visited the website at issue and filled out a consent form. Despite numerous requests—and repeated assurances from Plaintiff's counsel—Plaintiff has failed to provide his devices to defendant's expert for forensic examination. *See id.,* at ¶ 8. Stated simply—Plaintiff has delayed the inspection of the device which Defendant contends he used to provide consent. Such request was initially made on July 19, 2024, but only now is Plaintiff's counsel willing to schedule the inspection, which will (supposedly) move forward by the end of January.

Certification is properly denied on adequacy grounds in circumstances similar to these.

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

For instance, in *Alvarez v. Widnall,* No. CIVSA96CA1167FB, 1998 WL 1782553 (W.D. Tex. Mar. 4, 1998), the court denied certification where "[t]here was [] substantial evidence at the hearing that plaintiffs failed to adequately respond to discovery." *Alvarez*, 1998 WL 1782553, at *18. The plaintiff "admitted that he had documents in his possession [and] he failed to turn [them] over to defendant during discovery." *Id.* Thus, as "the plaintiffs appeared to have failed to diligently respond to discovery", they failed to demonstrate their adequacy to represent a class. *Id.*. Similar to *Alvarez,* Plaintiff has failed to submit his device for forensic examination in order to determine whether Plaintiff visited the website in question. This Court should find him an inadequate class representative.

## V. PLAINTIFF HAS FAILED TO SHOW EVEN BASIC COMMONALITY BEYOND THE FAILSAFE ELEMENTS OF HIS CLASSES

To certify a class, a plaintiff must establish common issues of law or fact that bind the entire class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). And it is not enough that there just be common questions—generalized evidence must exist to give rise to common answers across the entire class on issues likely to determine the merits of the case. *See Dukes*, 564 U.S. at 350 ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted).

Plaintiff's subclass definitions are presented in such a way that they lack any common elements beyond impermissible merits determination that cannot be determined at the certification stage.

As to the DNC Subclass, the potentially common elements of the class are all substantive merits issues: i) whether a number is on the national DNC list; ii) whether the call at issue was telemarketing; iii) whether the sender of the message was an "agent" of Defendant; iv) whether the number was used for residential purposes and v) whether the call was made without consent or an established business relationship. *See* Mot. at 9-10. Yet each of these items is a *merits-based* determination that cannot be made at the certification stage. *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013) ("it is improper to advance a decision

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

on the merits to the class certification stage.") (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 954 (9th Cir.2003)) (citations and internal quotation marks omitted). Stated alternatively, Plaintiff has pleaded an impermissible "failsafe" class that absorbs all of the elements of the underlying claim into the class definition. *See Greene v. Select Funding, LLC,* No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) ("When a 'class itself is defined in a way that precludes membership unless the liability of the defendant is established' it is considered a fail-safe class.") (quoting *Kamar v. RadioShack Corp*., 375 Fed. Appx. 734, 736 (9th Cir. 2010).

Indeed, if certification were granted, theoretically there would be nothing to try but the number of violations. *Every* class member would already have been determined to have won their case—they received calls that violate all of the elements of the DNC list. And if Defendant were to succeed on its defenses to the claims of a class member, then instantly that class member would be removed from the class—so there would be no binding res judicate effect. *See Quinto v. JPMorgan Chase Bank,* No. 11-CV-02920-LHK, 2011 WL 6002599, at *5 (N.D. Cal. Nov. 30, 2011) ("'Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.'") (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). These are the very concerns that animate the rule against failsafe class definitions: merits determinations must be made at the substantive stages of the case, not at certification. *See Victorino v. FCA US LLC,* 326 F.R.D. 282, 290 (S.D. Cal. 2018) (at the certification stage, "the district court does not conduct a mini-trial to determine if the class "'could actually prevail on the merits of their claims.'") (quoting *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 983 n.8 (9th Cir. 2011)); *In re High-Tech Emp. Antitrust Litig.,* 985 F. Supp. 2d 1167, 1179 (N.D. Cal. 2013) ("'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'") (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013)); *Stiner v. Brookdale Senior Living, Inc.,* 665 F. Supp. 3d 1150, 1167 (N.D. Cal. 2023) (same).

By defining the class in this manner, Plaintiff attempts to deprive Defendant of the ability to demonstrate individualized issues across the class. For instance, whether or not a number is

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

"residential" in nature is a factual issue subject to individualized issues to such a degree that one court affirmatively denied certification on that basis alone. *See Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 228 (N.D. Cal. 2024) (granting the defendant's affirmative motion to deny certification finding that the plaintiff failed to demonstrate how the question of whether a number qualifies as a residential number could be answered without individualized inquiries). Whether an established business relationship or consent exists are also often individualized issues defeating certification. *See Sapan*, 2021 WL 5302908, at *5 (denying certification because determining whether an individual had an establishment business relationship or otherwise consented to the calls would require individualized inquiries); *Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953, at *8 (C.D. Cal. Dec. 17, 2015) (denying certification and stating "[t]he Court cannot and will not engage in hundreds of mini-trials to determine whether a putative class member provided Defendants his or her or its prior express permission."); *Blair v. CBE Grp., Inc.,* 309 F.R.D. 621, 630 (S.D. Cal. 2015) (denying certification where "[t]he evidence offered by Defendant underscores the need for individualized inquiries to determine whether a particular class member provided express consent to receive phone calls from Defendant."); *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 578 (N.D. Ill. 2017) (denying certification as "no way for plaintiff to establish a lack of consent with generalized evidence."); *Gene And Gene LLC v. BioPay LLC,* 541 F.3d 318, 329 (5th Cir. 2008) (holding "that [the plaintiff] ha[d] failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class involved in this case [which] ... leads to the conclusion that myriad mini-trials cannot be avoided...."); *Bridge v. Credit One Fin.,* 294 F. Supp. 3d 1019, 1037 (D. Nev. 2018) (denying certification and finding "that individual issues of consent predominate and render the class action an inferior method to fairly and efficiently adjudicate the TCPA claims of the proposed members."); *Hicks v. Client Servs., Inc.,* No. 07cv61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) ("[U]ltimately consent is an issue that would have to be determined on an individual basis at trial."). So too are issues of agency. *See Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 444 (C.D. Cal. 2012) ("Determining whether an agency relationship

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

actually exists for each class member would require an individualized analysis. The Court would need to inquire into each retired player's manifestation of consent for Defendants to act on his behalf. These manifestations of consent will necessarily vary from individual to individual. Therefore, the existence of such agency relationships is not susceptible to common proof."). Plaintiff attempts to take these issues off the table completely by defining the class in a manner that if such a defense exists, the class member isn't in the class. But this effort to avoid fatal predominance arguments simply dooms his class as a failsafe.

Matters are the same with respect to the Prerecord Subclass. Once again, the only common elements of this class are: i) whether the call was made to a residential line; ii) whether the caller was an "agent" of the defendant; iii) whether a "prerecorded" voice call was made; and iv) whether the call was made without express written consent. Once again, *all* of these are merits issues. And *all* of these determinations cannot be made at the certification stage—only at trial. *See Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975) (stating determination of whether an action should be certified as a class action does not permit or require preliminary inquiry by trial into the merits); *Ellis*, 657 F.3d at 983 ( "[A] district court is required to examine the merits of the underlying claim in [the class certification] context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."); *Vizcarra v. Unilever United States, Inc*., No. 4:20-CV-02777 YGR, 2023 WL 2364736, at *11 (N.D. Cal. Feb. 24, 2023) ("That merits determination is not one for this Court at the class certification stage.").

It is no answer for Plaintiff to respond that defining the class alternatively would result in other problems. He is the master of his pleading and his decision to proceed with uncertifiable definitions ends the certification inquiry. *See Taylor v. Universal Auto Grp. I, Inc*., No. 3:13-CV-05245-KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) ("The existence of a 'failsafe' class 'constitute[s] an independent ground for denying class certification.'") (quoting *Kamar*, 375 Fed. Appx. at 736); *Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011) (fail-safe class definition was one of two grounds for decertifying class) *see e.g.,*

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

*Genenbacher v. CenturyTel Fiber Co. II,* 244 F.R.D. 485, 488 (C.D. Ill. 2007) (stating the proposed class is a fail-safe "because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class" and the plaintiffs' "[m]otion [for class certification] must be rejected on these grounds alone.").

## VI. INDIVIDUALIZED ISSUES PREDOMINATE TO THE EXTENT THE FAILSAFE CLASS IS REDEFINED

### A. Whether Class Members Consented to the Calls is an Individualized Issue.

Plaintiff argues "Via Renewables says it used the same website and the same Trusted Form software for all of the alleged consents." Mot. at 10. But Plaintiff badly misstates the evidence.

The truth is that Defendant obtains consents from numerous sources and websites. *See* Troutman Decl., at ¶ 3 (Astorga Depo. Tr. at 23:20-25). Its deponent never testified otherwise. *See id*. The lead records from these various websites were provided to Energy BPO. *See id.* (Astorga Depo. Tr. at 81:13-82:2). It is true that all of the consents were stored within a single database housed by Active Prospect. *See id.* (Astorga Depo. Tr. at 24:7-22, 25:1-7, 79:8-17, 80:1-7). But merely housing the records in the same location does not mean the consent record came from the same website; and they did not. *See id.* (Astorga Depo. Tr. at 23:20-25).

In order to assess the viability of consent across the entire class, therefore, the Court would need to review all of the hundreds of different websites where consent was obtained in order to determine the validity of any given website. Numerous cases have denied certification in TCPA cases under such circumstances. *See Jeffrey Katz Chiropratic, Inc. v. Diamond Respiratory Care, Inc.,* 340 F.R.D. 383, 388 (N.D. Cal. 2021) (denying class certification where the defendant used a "wide variety of ways to obtain consent" and consent could only be determined on an individual basis); *Connelly*, LLC, 294 F.R.D. at 578 (same); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 130 (N.D. Tex. 2020) (denying class certification and finding no commonality where the "Defendants' obtained phone numbers from numerous sources—preventing any attempt to show consent from a single source or 'in one stroke.'").

But matters are even more challenging here. Plaintiff does not apparently dispute that the website he visited was invalid to convey consent. In his own deposition testimony, he conceded

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

there was nothing apparently wrong with the website that provided consent to call his number. *See* Troutman Decl., at ¶ 4 (Clark Depo. Tr. at 105:7-24). Instead, he contends, apparently, that he did not actually visit the website, despite the fact that the website represented it had by providing the consent record. *See id.* (Clark Depo. Tr. at 100:23-101:17, 106:3-109:13). This, rather obviously, creates a question of fact. And one that must be resolved by the trier of fact—either the Plaintiff is telling the truth, or he is lying and has no claim.

Matters are no different for the class, however. As already shown, *every* individual called by Energy BPO would have been called *with* consent as a matter of practice and policy. *See* Astorga Decl., at ¶¶ 5-9, 13. Identifying members who claim they *did not* actually fill out the webform—despite the evidence of a visual rendering demonstrating they had—can only be done via mini-trials. Every individual claiming they did not provide consent would have to testify to that effect, and the jury would have to weigh that testimony against the evidence provided by the website operator and Active Prospect to the effect that consent had been provided.

This case is remarkably similar to *Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146 (S.D. Tex. Sept. 20, 2021). There, a plaintiff also sought to certify a case involving third-party leads. The plaintiff testified he had not filled out the form at issue, yet the court found determining which webform submissions were, and were not, valid was an individualized issue that defeated certification. *See Burk*, 2021 WL 4267146, at *6 (stating "the placement of the consent language on whoafreesamples.com is very different from the placement of the consent language on the other landing pages" and evidence regarding one website does not "constitute class-wide proof"). Matters are the same here, only much worse. In *Burk,* nine webforms were at issue—here hundreds are. *See* Astorga Decl., at ¶ 10.

At bottom, Plaintiff has made no effort to limit the class definition to a single website. As such, every website Defendant—or Spark Energy—used to obtain consent would need to be separately reviewed to determine the validity of consent (to the extent Plaintiff challenges the validity of these forms.)

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

**B. Whether Class Members' Phone Numbers are Residential is an Individualized Issue.**

Consent is only one individualized issue hidden by the failsafe class definitions. Numerous other issues also exist. For instance, whether or not a number is "residential" for purposes of the DNC Subclass is hotly contested. *See Hirsch,* 337 F.R.D. at 131 (stating "[t]his question [of whether a phone number is residential], however, is not susceptible to generalized proof. The inquiry is fact intensive."); *Mattson v. New Penn Fin., LLC,* No. 3:18-CV-00990-YY, 2023 WL 8452659, at *3 (D. Or. Oct. 12, 2023), report and recommendation adopted, No. 3:18-CV-00990-YY, 2024 WL 21568 (D. Or. Jan. 2, 2024) ("the question whether plaintiff's number is a residential or business phone number is not only fact-intensive but also hotly contested"); *see also Stevens-Bratton v. TruGreen, Inc.,* 437 F. Supp. 3d 648, 658 (W.D. Tenn. 2020) ("The determination about whether any particular wireless subscriber is a residential subscriber is fact-intensive.") (simplified).

*Hirsch* is directly on point. In *Hirsch,* the court stated:

> Hirsch must show not only that his number is residential, but also that each alleged class member's number is residential. Hirsch attempts to provide generalized proof by culling out phone numbers listed as a business in a commercial database. Hirsch's expert compared the numbers Defendants called against a database of business numbers, removed the business numbers from the alleged class, and submitted the remaining, allegedly residential, numbers. ***But this method is unreliable.*** Of the remaining numbers, Defendants' expert opined that a significant amount were still business numbers and supplied specific examples…No single source answers this question for each phone number. Each must be tested individually. Thus, resulting in a Herculean task at best.
>
> In short, resolving each phone number's residential status requires a fact-intensive inquiry. And the burden to show the residential status is on Hirsch, who failed to advance a viable theory employing generalized proof to establish residential status and therefore liability. As a result, there is no commonality.

*Hirsch*, 337 F.R.D. at 131 (emphasis added).

Here, [redacted] *See* Troutman Decl., at ¶ 7 (Verkhovskaya Depo. Tr. at 69:9-70:16; 80:16-83:23). As

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

such, Verkhovskaya's opinion on this subject is inadmissible as set forth in Defendant's separately and simultaneously filed *Daubert* motion.

Even if the information were sufficiently reliable to be submitted to a jury—and it is not—triable issues exist as to which numbers are and are not residential. Similar to *Hirsch*, Defendant's expert was able to identify 209 phone numbers which were business. *See* Troutman Decl., at ¶ 5 (Spark's Rebuttal Expert Report at ¶¶ 49-57, 107-110). As such, class members will be forced to testify, one at a time, as to the use of their numbers for residential purposes. *See Hirsch*, 337 F.R.D. at 131. This is especially true given the work of Defendant's expert Madelyn Moran, that confirms the many errors in the Verkhovskaya report. *See* Troutman Decl., at ¶ 5 (Spark's Rebuttal Expert Report at ¶¶ 34-58).

To be clear, Defendant does not seek to exclude Verkhovskaya's entire report at this time. Rather, the point is that a question of fact exists as to whether individuals Verkhovskaya states received calls on a residential number were actually using such numbers for other purposes. Evidence exists to support such a finding both in terms of the inadequacy of the data source Verkhovskaya used (PacificEast) and as to the affirmative counter-examples already identified by Defendant's expert. *See* Troutman Decl., at ¶ 5 (Spark's Rebuttal Expert Report at ¶¶ 49-57, 107-110). At trial, Defendant would have the right to call every class member to the stand to inquire regarding the usage of the number at issue—for this reason, certification is commonly denied on this issue alone. *See Payne*, 347 F.R.D. at 228 (granting motion to deny certification where the plaintiff failed to "advance a viable theory employing generalized proof to establish residential status.") (quoting *Hirsch*, 337 F.R.D. at 131); *Hirsch*, 337 F.R.D. at 131.

**C. Agency is also an Individualized Issue.**

Further, Plaintiff has presented no evidence that agency can be determined on common evidence.

First, agency is almost always a question of fact. *See Brown*, 281 F.R.D. at 443 ("Generally, whether an agency relationship exists between two parties is a question of fact."). A number of factors must be looked at—and the review is highly factual in nature. In *Jones v. Royal*

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

*Admin. Svcs., Inc*., 887 F.3d 443 (9th Cir. 2018), the Ninth Circuit Court of Appeals applied this same body of law to develop a ten-factor test to assess agency in the context of a TCPA class action. *See Jones, Inc*., 887 F.3d at 450 ("we adopt the following ten factors for determining whether a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee: 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business"). Applying the *Jones* factors in this case, a jury could easily conclude Defendant did not exercise sufficient authority over Energy BPO to create an agency relationship.

Second, and incredibly, despite defining a class based on all calls made by Defendant or *any* of its agents, Plaintiff has presented zero evidence of any calls made directly by Defendant and zero evidence of calls made by any company other than Energy BPO. So, there is simply no way for the Court to know how many agents' activity are at issue or what level of control does/does not exist as to each of them. Thus, Plaintiff has categorically made no showing with respect to commonality as to the maker of the calls at issue. *See Chinitz v. NRT W., Inc.*, No. 18-CV-06100-NC, 2019 WL 4142044, at *5 (N.D. Cal. Aug. 30, 2019) (finding no commonality where the plaintiff failed to provide evidence of a broader practice of control the defendant exerted over its associates); *Hirsch*, 337 F.R.D. at 131–32 (stating "Hirsch correctly identifies [vicarious liability] question as a potential commonality, but he fails to show the existence of common answers. Hirsch's failure dooms his claim because vicarious liability is necessary.").

## VII. <u>CONCLUSION</u>

Based on the foregoing reasons, Defendant submits that Plaintiff's Motion for Class Certification should be denied.

TROUTMAN AMIN, LLP
400 Spectrum Center Drive, Suite 1550, Irvine CA 92618
troutman@troutmanamin.com

Dated: January 15, 2025

TROUTMAN AMIN, LLP

By: _/s/Brittany A. Andres_
Eric J. Troutman
Puja J. Amin
Brittany A. Andres

*Attorneys for Defendant Via Renewables, Inc., f/k/a Spark Energy, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2025, a copy of the foregoing was served by ECF to counsel of record.

_/s/ Brittany A. Andres_
Brittany A. Andres