UNITED STATES DISTRICT COURT
CALIFORNIA NORTHERN DISTRICT (SAN FRANCISCO)


BRIAN CLARK,                              3-24-cv-00568-JSC

          Plaintiff,                      March 25, 2025

     vs.                                  SAN FRANCISCO, CA

VIA RENEWABLES, INC.,

          Defendant.


BEFORE THE HONORABLE JACQUELINE SCOTT CORLEY
UNITED STATES DISTRICT JUDGE

TRANSCRIPT OF MOTION TO CERTIFY CLASS


A P P E A R A N C E S:

For the Plaintiff:   CHRISTOPHER J. REICHMAN, ESQ.
                     Prato & Reichman, APC
                     3675 Ruffin Road, Suite 220
                     San Diego, CA 92123
                     chrisr@prato-reichman.com


For the Defendant:   ERIC J. TROUTMAN, ESQ.
                     BRITTANY A. ANDRES, ES1.
                     Troutman Amin, LLP
                     400 Spectrum Center Drive, Suite 1550
                     Irvine, CA 92618
                     troutman@troutmanamin.com
                     brittany@troutmanamin.com


– – – – – – – – – – – – – – – – – – – – – – – – – – – – –

ROBIN L. HERRERA, RMR, CRR, CRC
(Via Zoom Videoconferencing)
United States Court Reporter
401 West Evans Street
Florence, SC 29501
robin_herrera@scd.uscourts.gov

(Stenotype/Computer-Aided Transcription)

```
 1              SAN FRANCISCO, CA; TUESDAY, MARCH 25, 2025
 2              HONORABLE JACQUELINE SCOTT CORLEY, PRESIDING
 3                             * * *
 4              THE CLERK:  Calling Civil Action 3:24-0568.  Clark
 5   v. Via Renewables Inc.
 6              THE COURT:  Make your appearance.
 7              MR. REICHMAN:  Chris Reichman for the plaintiff,
 8   Your Honor.
 9              MR. TROUTMAN:  Good morning, Your Honor.
10   Eric Troutman along with my colleague Brittany Andres for
11   the defense.
12              THE COURT:  Okay.  First, Mr. Troutman, is Via
13   Renewables the correct defendant or not?
14              MR. TROUTMAN:  No, Your Honor, it is not.
15              THE COURT:  So what are we doing about that?
16              MR. TROUTMAN:  Well, Your Honor, we've advised the
17   plaintiff and we would recommend that there be a suitable
18   amendment made to the pleadings.
19              THE COURT:  To name who?
20              MR. TROUTMAN:  The correct party as we've
21   identified is Spark Energy Gas LLC.
22              THE COURT:  All right.  So for purposes of this
23   motion, can we deem Spark Energy Gas LLC as the defendant?
24              MR. TROUTMAN:  Yes, Your Honor.
25              THE COURT:  Okay.  All right.  So we're going to
```

1    do that.

2                Okay.  All right.  So we're here, then, and it is

3    on Plaintiff's motion for class certification, Mr. Clark,

4    and it's his burden to show by a preponderance of the

5    evidence that the Rule 23 factors are met for purposes of

6    Plaintiff's proposed class definition.

7                So first with respect to numerosity, how many

8    punitive class members are there?

9                MR. REICHMAN:  At this point we know there are at

10   least 18,000.

11               THE COURT:  There's 18,000 class members who did

12   not consent?

13               MR. REICHMAN:  There's 18,000 class members who

14   did not validly consent under the --

15               THE COURT:  Okay.  What is the evidence that they

16   did not validly consent?

17               MR. REICHMAN:  Number one, under *True Health v.*

18   *McKesson*, if consent is brought up it has to actually be

19   proven by the defendant.  It shifts the burden.

20               THE COURT:  It's an affirmative defense, but we're

21   talking about class certification, not motion for summary

22   judgment; right?  You actually pled the lack of consent in

23   your class definition.  So I am merely applying your class

24   definition to the motion.  You put it in there.

25               So my question is how many -- what is the evidence

1    that there are 18,000 punitive class members who did not

2    consent?

3        MR. REICHMAN:  The defendant has presented a

4    website that does not meet the criteria.

5        THE COURT:  Which criteria?

6        MR. REICHMAN:  For the DNC subclass under 47

7    64.1200(c)(2)(ii), which requires a signed writing giving

8    express consent prior to the calls.

9        THE COURT:  For the DNC subclass?

10        MR. REICHMAN:  For the "do not call" registry

11    sublcass, yes, Your Honor.

12        THE COURT:  Okay.  And it's which section?

13        MS. BULGUCHEVA:  Subsection (c) of -- sorry --

14    47 CFR 64.1200(c)(2).

15        THE COURT:  (c)(2).  Okay.  I got that right here.

16        MR. REICHMAN:  And then skipping past Roman

17    numeral (i), which is the safe harbor defense; Roman numeral

18    (ii) is the prior express written consent.

19        THE COURT:  And your -- and where is this, by the

20    way, in your motion?

21        MR. REICHMAN:  Well, I cited 64.1200 a number of

22    different --

23        THE COURT:  I know.  But that's how -- that is why

24    there is a common that they did not consent.

25        MR. REICHMAN:  I believe we raised in the motion.

1    I don't know where exactly off the top of my head.

2            THE COURT:  I don't either.  Okay.  So it's

3    that -- and the website cannot count?

4            MR. REICHMAN:  It cannot because there's no

5    mechanism for signing in that website.  It does require that

6    the person asserting the defense has to show a signed

7    written document.

8            THE COURT:  All right.  So your argument is that

9    that's a common question and that all 18,000 people -- well,

10   and some of them were directed through phone calls and were

11   passed that way, but that you say is not okay because that's

12   a phone call, an oral consent, and the other's not; right?

13           Okay.  Mr. Troutman.

14           MR. TROUTMAN:  Yes, Your Honor, and may it please

15   the Court.  As the Court has correctly identified, the

16   plaintiff has defined a class based upon individuals who did

17   not provide express written consent.  There are no further

18   contours that have been expressed, and there has been no

19   road map given to the Court in terms of how these

20   individuals are to be identified and who they are.

21           It is undisputed that my client does, in fact,

22   rely on third parties who operate websites -- hundreds of

23   them -- where consumers provide their information and

24   request phone calls from companies like my client that

25   provide good energy services.

 1              There was no argument whatsoever in the

 2    plaintiff's motion that this website, either the particular

 3    website at issue with the named plaintiff -- which is Via

 4    Renewables -- excuse me -- forgive me, I forget the website

 5    off the top of my head --

 6              MR. REICHMAN:  Bestamericansavings.com.

 7              MR. TROUTMAN:  Bestamericansavings.com.  Again,

 8    Your Honor, the class is not limited to

 9    bestmericansavings.com.  So we, of course, have advised the

10    Court that the main plaintiff went off of that specific

11    website and as a result --

12              THE COURT:  Does that specific website have a

13    signed written agreement?

14              MR. TROUTMAN:  By signed -- I'm going to provide

15    the language from that form, Your Honor.  I apologize, this

16    is not specifically in the record because, again, this

17    specific argument was not raised and so we did not oppose.

18              THE COURT:  Yes.

19              MR. TROUTMAN:  But for the sake of completeness,

20    there is a -- there was a form that included a button to be

21    clicked to submit, which under the E-Sign Act -- which is

22    also part of the CFR -- does constitute a valid signature,

23    right below that button there was language that provided:

24    "By submitting this form I expressly consent to be contacted

25    by any partner in the AcquireCrowd network" -- which was a

1   hyperlink -- "with materials for services via direct or

2   electronic mail, phone calls to the number provided,

3   texts/SMS messages via automatic or automated dialing

4   systems, and prerecorded messages.  Consent is not a

5   condition of purchase."

6           When Mr. Clark submitted his phone number and his

7   correct personal identifying information -- including his

8   first name, middle name, and last name and his correct birth

9   date -- and then clicked that button, what he has done is

10  now signed a written agreement allowing any of the

11  individual companies within that marketing partners list --

12  which I will represent to the Court included my client Spark

13  Energy -- all of these entities are now allowed to contact

14  him for the purpose of reaching out to him, in this case, to

15  provide a good electric service for his home.

16          So we have a situation where Mr. Clark, the

17  evidence is quite clear, did provide the required consent

18  that allowed my client --

19          THE COURT:  Because that's not in the record.

20          MR. TROUTMAN:  Well, we do, of course, have,

21  Your Honor, the -- I mean, backing up, there is a

22  declaration from Mr. Astorga, who presents a very elegant

23  explanation that, listen, Spark Energy does not make

24  outbound calls without consent, period.

25          THE COURT:  I'm just saying I don't have anything

1  in the record one way or the other as to what -- I read

2  Mr. Clark's deposition, and if something was shown to him,

3  it's not attached.  It's not in the record, what you just

4  read to me; right?

5          MR. TROUTMAN:  That is true, Your Honor.  Yes,

6  that is true.

7          THE COURT:  Why isn't that in the record?  I mean,

8  why is that not --

9          MR. REICHMAN:  Frankly, Your Honor, we never read

10  numerosity as requiring us to prove that the affirmative

11  defense does not exist.

12          THE COURT:  You put it in your last definition.

13          MR. REICHMAN:  I'm aware, Your Honor.

14          THE COURT:  So you put it in your class

15  definition.

16          MR. REICHMAN:  Even though we put it in our class

17  definition, many circuit authorities that have come out have

18  said that if the other side wants to assert --

19          THE COURT:  But also that it's relevant for class

20  certification purposes.

21          MR. REICHMAN:  In my opinion -- and frankly,

22  putting it in the definition may have been a mistake,

23  Your Honor, because in our opinion, as to affirmative

24  defenses, it's not Plaintiff's job to prove that affirmative

25  defenses do not exist in Plaintiff's *prima facie* case.

1          THE COURT:  That is true.  That is true.  But for

2    class -- but this isn't an individual claim.  We can proceed

3    with Mr. Clark as an individual, no problem.  This is class

4    certification, and those cases -- *McKesson* and the one that

5    it relied on --

6          MR. TROUTMAN:  *Van Patten*, Your Honor.

7          THE COURT:  -- *Van Patten* make it clear that the

8    consent issue can defeat class certification; right?

9          MR. REICHMAN:  If it requires individualized

10   inquiries, Your Honor, yes.

11         THE COURT:  Yes.  So -- well, okay.  So then --

12   all right.  Well, maybe that sort of answered the first

13   question, which is you said maybe our definition was a

14   mistake.

15         But if you don't include -- I don't know how you

16   would do it.  I don't know.  I don't think you can just take

17   it out because then we might have a class that is 95 percent

18   of people who don't have any standing; right?  And we know

19   from -- how do you pronounce that, *Olean* [pronunciation]?

20         MR. REICHMAN:  I think it's *Olean*.

21         THE COURT:  -- the tuna case that you can have

22   some maybe, but not most.  You don't have standing.  And, in

23   fact, the Supreme Court has this term, "the standing issue,"

24   and maybe it's going to have to be everybody in the punitive

25   class that have standing.

1                But even apart from that -- okay.  But it just

2       wasn't addressed in the motion at all.  I mean, I didn't

3       even -- and so -- and certainly you didn't address -- well,

4       I don't have that.  Okay.  So that's one problem.

5                The second is the typicality.  And let's say I

6       certified the class, but the jury found that Mr. Clark, in

7       fact, did consent.  How -- he claims that that's not him.

8       He didn't fill in the website.  That's a pretty unique

9       defense; right?  How does that not make him atypical?

10               MR. REICHMAN:  I don't see how it would make him

11      atypical at all.  Their claim, so far, in the declarations

12      they have provided without any of these consents that they

13      say they have --

14               THE COURT:  Yes.

15               MR. REICHMAN:  -- is that all of the consents are

16      gathered in the same way; by a clicked button on a website;

17      the website has, you know, sufficient language, which it

18      doesn't.  And, you know, with these consent-forming website,

19      you know, consents will apply to every single call they

20      make.

21               You've heard Mr. Troutman a minute ago.  They

22      don't make outbound calls without a consent is their

23      allegation.  So if the consent is valid, and they don't make

24      outbound calls without consent, it would apply class-wide;

25      would it not?

 1          THE COURT:  So you're saying his lack of his claim
 2   that he actually didn't do it is irrelevant to his
 3   typicality?
 4          MR. REICHMAN:  Whether the consent applies
 5   typically across the class or not, yes.
 6          THE COURT:  All right.  Okay.  Okay.  That's not
 7   in there, but I understand where you're going.
 8          And then the same thing now with predominance and
 9   I think failsafe.  We understand that.  I mean, you argued
10   failsafe, but that's not Ninth Circuit law.
11          MR. REICHMAN:  Correct.
12          THE COURT:  But *Olean* -- however you pronounce
13   it -- an *en banc* decision, in footnote whatever number, 14,
14   says that does apply and that was decided before the cases
15   that you rely on.
16          MR. REICHMAN:  Which means the Ninth Circuit has
17   given us not a lot of good guidance on this one because the
18   cases we've seen and the ones I've cited to you all say that
19   you have to assume in a class definition that it includes
20   the implied terminology "people who claim" and then the
21   class definition.
22          THE COURT:  Well, I don't know.  You say they
23   don't have good guidance.  It's an *en banc* decision; right?
24   The earlier cases, I think, were a bit equivocal, but now we
25   have an *en banc* decision from 2022; so -- but that's sort of

1    neither here nor there.

2            MR. REICHMAN:  If it solves the problem for

3    Your Honor, I'm willing to make the motion and delete the

4    class definition part about the defense.

5            THE COURT:  Well, I don't know if it solves the

6    problem at all.  I don't know if it solves the problem.  I

7    do think the record here on both sides was shallow, to be

8    honest, on both sides was a bit shallow.  I think you raised

9    the consent issue, but I don't know what it was, what it

10   said, or any of those things, and yours didn't address it at

11   all really.

12           So I think what I'll do is I'm going to deny the

13   motion for class certification for the reasons we've just

14   discussed.  And what I want you to do is then come make an

15   offer of proof as to what your new class definition would be

16   and how you believe it would satisfy.

17           In other words, don't do a full-blown motion.  I'm

18   cognizant of Rule 1.  I don't want to go through that.  If

19   there is a way that it can be fixed, then we can then allow

20   the briefing to go forward -- maybe -- right?  I'm not going

21   to -- if it's possible that it can be fixed.

22           I mean, I understand the argument.  The argument

23   is -- and I'm not supposed to address the merits -- the

24   argument is that the consent, that the clicking on the

25   website is not valid express written consent under the law

1    and, therefore -- right?  That's your argument?

2                MR. REICHMAN:  That's part of our argument.  Our

3    argument is that the clicking of consent by itself is not a

4    signature even under the E-sign Act which requires more,

5    which is why we have electronic signature companies who

6    verify signatures.

7                Number two, that the terminology of the consents

8    that we've seen that were not provided to the Court are not

9    sufficient because they're not making a deal with the

10   seller.  They're consent farming for thousands of companies.

11   You give consent to this whole laundry list of people we may

12   have call you.  And that laundry list of people is under

13   terms of service, which is hyperlinked, which the TCPA CFR

14   does not allow for hyperlinking.

15               THE COURT:  Okay.

16               MR. REICHMAN:  So we think there are multiple

17   facial problems with the alleged consents to the extent that

18   they were really even gathered.  We have strong evidence in

19   our case that that consent was actually fabricated, and I do

20   not know whether any of the consents are actually

21   legitimate.

22               THE COURT:  Yeah, I don't either because, like,

23   there's nothing in this record.

24               MR. REICHMAN:  In relying on *True Health*, we

25   didn't take the defense as being part of our case, which I

1    admitted might have been a mistake on our part.

2            THE COURT:  Yeah.  Why don't you go back and read

3    *Van Patten* and *McKesson*.  I think that was a mistake.  It's

4    clear that that's something.

5            Okay.  So -- well, let me ask you this:  Is that

6    the thing to do, Mr. Troutman?  Or he has articulated

7    something.  Maybe we should just have him rebrief it.

8            MR. TROUTMAN:  Your Honor, I respect the Court's

9    desire always to see justice done and to explore whether or

10   not certification might be appropriate here.  Of course, I

11   would be remiss if I did not assert on behalf of my client.

12   He's had his shot, Your Honor, and he ought not be permitted

13   to labor long on the subject a second time, especially

14   departing completely from the pleaded class definitions

15   after, Your Honor, discovery has closed.  This would be a --

16           THE COURT:  We're not doing more discovery.

17           MR. TROUTMAN:  Understood, Your Honor.  We're not

18   asking for more discovery.  What we are asking for is due

19   process.  If the plaintiff intended to completely and

20   wholesale modify the class definition to focus on a

21   completely different theory that was never previously

22   disclosed, that should have happened before the close of

23   discovery, we respectfully submit.

24           THE COURT:  Well, never previously disclosed, why?

25   Did you ask?  Did you ask what is your theory about why

1   there is not consent, and he didn't give an answer in

2   discovery?

3           MR. TROUTMAN:  For clarification, Your Honor, of

4   course we did.  That's basic class discovery.

5           THE COURT:  Like an interrogatory?  That's what

6   I'm asking.

7           MR. TROUTMAN:  We have certainly asked him to

8   confirm whether or not he visited the website and if their

9   -- and what their theory was as to why this website was

10  insufficient.

11          THE COURT:  But where is that?

12          MR. TROUTMAN:  Of course, Your Honor, that's not

13  present here because --

14          THE COURT:  But just tell me.  You think you have

15  some --

16          MR. TROUTMAN:  Let me confer with my counsel.  I

17  want to make absolutely sure before I make any

18  representation to the Court.

19          THE COURT:  Let me just talk here.

20          MR. TROUTMAN:  Yeah.

21          THE COURT:  This is actually what I want to do

22  here.  I want an offer of proof, and you can respond with

23  whatever evidence you want; right?  So you make your offer

24  of proof, in a sense, this is what I would do and this is

25  why you should allow me to do it again -- right? -- as well.

1        You don't have to cite the evidence, but I just
2   want to know this is the definition that I would move for
3   class certification on and these are the theories, the
4   common theories.  This is what the predominance would be.

5        We know that the issue here is consent; right?  If
6   they never even got anything, it would be an easy TCPA case.
7   These are complicated TCPA cases where the defendant says
8   "We got consent.  We didn't just randomly call a number; we
9   got it from someone; we got it from somewhere," because
10  people every day -- right? -- even just this morning
11  ironically I got a phone call from some number, and I had no
12  idea know who it was, and I just let it go because probably
13  half the time you don't want to bother going I don't agree,
14  you just click I agree or whatever.  So it's complicated.

15       So you'll do that, and then you can respond to the
16  offer of proof with why they shouldn't be allowed to do
17  that, and then we'll have a status conference on it that we
18  can do by video.

19       Are you both -- you're from Southern California?
20  Where are you from, Mr. Troutman?

21            MR. TROUTMAN:  Southern California.

22            THE COURT:  You can appear by video.

23            MR. TROUTMAN:  Very well.

24            MR. REICHMAN:  Just as a clarification on this,
25  Your Honor, the evidence -- the offer of evidence, the

| | |
|---|---|
| 1 | rebuttal, we're not going to be having new evidence coming |
| 2 | in that hasn't been produced in discovery? |
| 3 | THE COURT:  You can do new evidence, but we're not |
| 4 | doing more discovery. |
| 5 | MR. REICHMAN:  Okay. |
| 6 | THE COURT:  But they can respond however they |
| 7 | want.  But nobody can get more discovery from the other side |
| 8 | because class cert discovery has closed. |
| 9 | MR. REICHMAN:  I understand that.  But if they're |
| 10 | producing new evidence and I have no opportunity to cross |
| 11 | that evidence or find the truth of falsity of -- |
| 12 | THE COURT:  You had opportunity during discovery. |
| 13 | MR. REICHMAN:  I did, but they didn't produce |
| 14 | anything on which I could actually investigate. |
| 15 | THE COURT:  Well, why didn't you seek that?  You |
| 16 | knew that they were claiming consent. |
| 17 | MR. REICHMAN:  I did -- we did seek their |
| 18 | consents.  We have a number of consents right now. |
| 19 | THE COURT:  Okay. |
| 20 | MR. REICHMAN:  What we don't have is any |
| 21 | declaration from the third-party consent, the farmer, or |
| 22 | anything like that that explains the authenticity of those |
| 23 | documents or any of the baseline foundational issues. |
| 24 | THE COURT:  Okay.  But you had class cert |
| 25 | discovery to do that.  You could have done Rule 45 |

1    subpoenas.

2         MR. REICHMAN:  And you're asking me for an offer

3    of proof where I would be taking the consent issue out of

4    our class definition, making the --

5         THE COURT:  I'm not asking you for that.  You said

6    that maybe it was a mistake and you wanted to do that when I

7    pointed out to you that you had made no showing with respect

8    to the lack of consent, which you had put in your

9    definition.

10        MR. REICHMAN:  Which I admitted.

11        THE COURT:  Yes.

12        MR. REICHMAN:  I admitted.

13        THE COURT:  So I'm not asking you to do anything.

14   What I'm saying is you haven't come close to meeting your

15   Rule 23 burden on the class definition that you proposed --

16   that's all I'm saying -- and I'm going to give you an

17   opportunity to explain why I should give you a chance to

18   amend your class definition and do it again.  That's all I'm

19   saying.  And each side has whatever discovery they got from

20   the other side, and there we are, but no more discovery.

21        MR. REICHMAN:  And that's why I was asking about

22   if they want to go get new declarations from people or

23   things like that that are going to be put into evidence,

24   that seems a little unfair where I'm not allowed any

25   discovery.

1          THE COURT:  But they're not allowed discovery.
2     They can't do subpoenas either.  Like, no.  Everyone's on
3     the same side.  Yes, they do have access to more
4     information, that's why we had a long class or discovery
5     period so you could delve into it that.
6          I mean, you knew the issue was there.  Maybe you
7     want to narrow it to best, whatever, that particular vendor.
8     I don't know.  That might help.  But I'll let you think
9     about that.
10         So I'll give you 30 days.  And since Mr. Troutman
11    is here and you both came up here, may I suggest that you go
12    get a cup of coffee and just, I don't know, talk about that,
13    talk about this, talk about the definition, talk about here
14    today, and just see if there's something to be done.
15         But -- so why don't you by -- today is the 25th --
16    by April 29th -- I'll give you more time -- you can submit
17    your offer of proof.  I guess is that what I should call it?
18    Or a motion -- maybe it's really a motion to amend because
19    you're asking to amend your complaint to change the class
20    definition; right?
21         MR. REICHMAN:  Yes.
22         THE COURT:  Why don't we do it that way.  So let's
23    change it.  You'll file a motion to amend by April 24th, but
24    what I'll need to know is why it's not futile, in other
25    words, in terms of class cert.  Mr. Clark has his claim,

1    that's fine.

2        MR. REICHMAN:  We could also style it as a motion

3    to amend the class definition.  Courts have regularly

4    accepted amendment at the certification on stage without

5    going back and amending the complaint.

6        THE COURT:  Yeah.  I'm just trying to figure out

7    procedurally how to do it.  That's right.  But I don't want

8    to do that if it can't be fixed -- right? -- because I don't

9    want either side to have to engage in that cost if it can't

10   be fixed.  That's why I just want to know.

11       The things that you articulated today are

12   brand-new to me.  I had no idea because none of it was

13   articulated in the papers.  So that's fine.  I just want it

14   articulated in writing; so we can do it as a motion to

15   amend; we can do it as an offer of proof.  I don't really

16   care.

17       So actually what I want you guys to do, go have

18   your cup of coffee, figure out how you want to present it to

19   me, and then submit a stip to me by Friday that tells me

20   when Plaintiff will file, when Defendant will respond, and

21   if Plaintiff wants to do a reply, and then do it as a

22   hearing, but we can do it on Zoom.

23       MR. TROUTMAN:  Very well, Your Honor.  We'll do

24   so.

25       THE COURT:  All right.  Okay.  All right.  So

1    motion denied without prejudice, and you'll give me a stip

2    by Friday on how you're going to put forward to me whether

3    we should go forward again with a new proposed definition.

4            MR. REICHMAN:  Thank you.

5            THE COURT:  Thank you.

6            MR. TROUTMAN:  Thank you, Your Honor.

7        (Proceedings adjourn at 11:02 AM.)

8                        * * *

9

10                 CERTIFICATE OF REPORTER

11    I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.

12    ___/s/  Robin L. Herrera___        May 2nd, 2025
     Robin L. Herrera, RMR, CRR, CRC        Date

13    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25