1

2

3

4              UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    BRIAN CLARK,                          Case No.  24-cv-00568-JSC

                    Plaintiff,
8
                                           **ORDER DENYING RENEWED**
9         v.                               **MOTION FOR CLASS**
                                           **CERTIFICATION**
10   VIA RENEWABLES, INC.,
                                           Re: Dkt. No. 68
                    Defendant.
11

12

13        Plaintiff Brian Clark, on behalf of four proposed classes, alleges violations of the

14   Telephone Consumer Protection Act ("TCPA").[1] (Dkt. No. 23.) Plaintiff contends his residential

15   phone number is on the federal Do Not Call Registry and Defendant, Via Renewables, Inc., called

16   his phone number ten times and left identical pre-recorded voice messages, all in violation of the

17   TCPA. (*Id.* ¶ 7, 17-20.) The Court previously denied Plaintiff's motion for class certification

18   without prejudice and ordered Plaintiff to make an offer of proof as to whether amendment of the

19   class would be futile. (Dkt. No. 61.) Plaintiff made an offer of proof, and this renewed motion for

20   class certification followed.  (Dkt. No. 68.)

21        Having carefully reviewed the parties' briefing, and having had the benefit of oral

22   argument on October 16, 2025, the Court **DENIES** the motion. Plaintiff has not shown his claims

23   or defenses are typical of the class, that he is an adequate representative of the class, or that

24   common issues of law or fact predominate.

25   //

26   //

27

28   _____
     [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Amended Complaint's Allegations

"[Defendant] is engaged in a scheme to sell natural gas and energy services via cold calls to residential phone numbers on the protected federal Do Not Call Registry which [Defendant] calls without prior express written consent, through their agents and affiliates, using a pre-recorded message." (Dkt. No. 23 ¶ 7.) "[Defendant] calls various numbers in the United States to sell [Defendant]'s energy services without regard to whether those numbers are on the Do Not Call Registry or not, using a pre-recorded message regardless of whether the number is residential or not." (*Id.* ¶ 9.) Further, Defendant does not "check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance, nor confirm the number is not a residential number." (*Id.* ¶ 10.) Defendant conducts "cold calls" nationally "with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not." (*Id.* ¶ 11.)

Plaintiff is the only named plaintiff in this putative class action. His home phone number "has been tariffed as a residential line since he was assigned it by the phone company more than ten (10) years ago." (*Id.* ¶ 14.) On December 22, 2007, he "registered his residential line on the National 'Do-Not-Call' Registry," and maintained it on the Registry to the present day. (*Id.* ¶ 15.)

In March 2023, Defendant "made ten (10) calls to [Plaintiff's] home phone number," using various Caller ID numbers. (*Id.* ¶ 13.) For each call he "received a voice message that was from a 'Michelle' who was allegedly calling about [his] natural gas bill and requested return call to 888-928-3199." (*Id.* ¶ 17.) "The messages use nearly identical wording and the voice has the same monotone speaking structure in every message which shows that the calls were pre-recorded messages and not a call from a live person." (*Id.* ¶ 19.) Two days after the last of these calls, Plaintiff "called the 888-928-3199 number that was present in all of the voice messages and was immediately connected to [Defendant]." (*Id.* ¶ 20.)

### B. How Defendant Claims It Obtains Consent

Defendant's Vice President of Sales, Julio Astorga, attests Defendant uses two types of vendors. The first type "operate websites where consumers may fill out forms and request to be

contacted by [it]." (Dkt. No. 78-3 ¶ 8.)  Defendant's "contracts with [website] vendors require valid express written consent be provided." (Dkt. No. 78-3 ¶ 9.)  "These vendors do not just work for [Defendant] but with any number of other companies for whom they also generate consumer leads." (*Id.* ¶ 10.)  Accordingly, "these vendors use hundreds of different URLs to acquire the lead information and forms sent to [Defendant.  Inbounds.com … is one such vendor. Bestamericansavings.com is one such URL." (*Id.*)  Defendant receives and maintains this lead information through Active Prospect, an "online software repository for vetting and storing lead [data]." (Dkt. No. 42-3 6:8-10.)

For each consumer lead, Active Prospect stores a consent record called a 'TrustedForm.' (Dkt. No. 78-3 ¶ 14.) A TrustedForm script is installed on websites to track "[a]nything the visitor might be doing on that page." (Dkt. No. 78-11 at 6:25-7:1-2, 9:3-14.) The script "listens for events as they take place in the browser," like when "a consumer checks a box," "inputs … a form with their information," "move[s] their mouse[,] or click[s] on something." (Dkt. No. 68-7 at 11:13-17.) TrustedForm "compiles … a log of [these] events" with metadata about the transaction, including "a timestamp of when the lead was captured" and "the IP address of the person." (*Id.* at 8:15-19, 11:22.) Then, "TrustedForm will issue a certificate" containing this information so "whoever receives that lead has independent verification of when and where that consumer filled out the form, and also gives them a visual … session replay of what happened[.]" (*Id.* at 7:6-12.)

A session replay is a visual rendering of "what the consumer saw on that page, [and] how they interacted with that page." The replay is "a best guess in a visualization of data points that [TrustedForm] obtained." (*Id.* 13:9-11.) "This visual rendering is helpful for demonstrating approximate times that it took for a consumer to information[.] [I]t's useful to tell us what information was entered, what key strokes took place, and what the websites looked like, but might not be 100 percent accurate in terms of tracking exactly what the direction that the mouse moved at any given moment[.]" (*Id.* 13:18-24.) Additionally, in some instances, the visual rendering will not show the customer clicking the 'register' button to submit the completed form even though the TrustedForm script logged the customer doing so. (Dkt. No. 68-7 at 15:3-25, 16:1-18.)

The second type of vendor Defendant works with is "a call center vendor" that "make[s] calls to consumers who have consented to receive calls." (Dkt. No. 78-3 ¶ 12.)

> One such vendor is Energy BPO, Corp. ('Energy BPO'). All calls made by Energy BPO were contractually obligated to be made with consent—calls could not have been placed by Energy BPO unless a consent record was first received by [Defendant], stored in its account with Active Prospect, and then transferred to Energy BPO.

(*Id.* ¶ 13.) Indeed, Energy BPO, attests "Energy BPO Corp. would only attempt to sell [Defendant's] products from phone numbers that were provided by [Defendant]." (Dkt. No. 68-3 ¶¶ 3-5.)

### C. Evidence as to Plaintiff's Consent

Defendant asserts Plaintiff completed a webform providing his consent to be contacted. "On March 3, 2023, Plaintiff's name and contact information was submitted via a webform on BestAmericanSavings.com." (Dkt. No. 78-3 ¶ 21.) Defendant contends this webform contains the following language below the "Register" button:

> By submitting this form, I expressly consent to be contacted by any partner in the AcquireCrowd Partner Network with materials for services via direct or electronic mail, phone calls to the number provided, text/SMS messages via automatic or automated dialing system(s), and pre-recorded messages. Consent is not a condition of purchase and may be revoked at any time.

(Dkt. No. 78-6 at 2.)[2] "As a result of that webform submission, [Defendant] transmitted the lead record to Energy BPO, who made the challenged calls to Plaintiff." (Dkt. No. 78-3 ¶ 21.)

"Plaintiff's webform submission included an Active Prospect TrustedForm, including a Certificate of Authenticity, Event Log, [and] Session Replay[.]" (Dkt. No. 23.) The Certificate of Authenticity attached to Plaintiff's webform describes a 46-second visit to the website https://www.bestamericansavings.com at 9:56 am on March 3, 2023 and contains Plaintiff's date of birth. (Dkt. 78-4; Dkt. No. 79-1 at 1, 3.) The Certificate also says the visitor used a Google Chrome browser on a Windows 7 operating system and did so from Lancaster, California. (*Id.*)

---

[2] Plaintiff objects to Exhibit A, Dkt. No. 78-2, filed in support of Defendant's Opposition brief. (Dkt. No. 81-2.) This order does not rely on this exhibit, so the Court SUSTAINS Plaintiff's objection, notwithstanding Plaintiff's failure to comply with N.D. Cal. Civil Local Rule 7-3(c) ("Any evidentiary or procedural objections to the opposition must be contained within the reply brief or memorandum").

1    The session replay of the website visit displays a completed form with contact information,

2    including a first and last name, email address, street address, phone number, and date of birth. (*Id.*)

3    A screenshot of the replay contains the name briansean clark and Plaintiff's residential phone

4    number. (*Id.*; *see* Dkt. No. 1 ¶ 13).

5         Plaintiff swears he did not visit the bestamericansavings.com website. In his declaration,

6    Plaintiff attests: "I never gave anyone from [Defendant] or Energy BPO permission to call me, and

7    I did not fill out any online inquiry form, as they allege." (Dkt. No. 68-4 ¶ 16.) At his deposition,

8    Plaintiff testified under oath he "never visited the website" and has "never seen the privacy

9    policy" on the website. (Dkt. No. 78-12 at 16:24-25, 17:1-8.)

10   **D.  Plaintiff's First Motion for Class Certification**

11        Plaintiff asserts one cause of action for two different TCPA violations: (1) calling numbers

12   on the national Do-Not-Call Registry ("DNC Registry" or the "Registry"); and (2) making

13   prerecorded marketing calls to residential numbers.  (Dkt. No. 23 ¶ 5.)  Plaintiff initially moved to

14   certify the following nationwide subclasses:

> **Subclass No. 1 ("DNC Subclass")**
> All persons and entities located within the United States of America
> who claim to be able to provide a phone bill or statement showing
> they were a residential telephone subscriber and that their number was
> registered on the National Do-Not-Call Registry to whose residential
> telephone Defendant and/or its agents transmitted two or more
> telemarketing calls in one calendar year without prior express written
> consent from the called party or an 'existing business relationship' at
> any time from January 30, 2020 to the present, including up to and
> through trial.
>
> **Subclass No. 2 ("Prerecord Subclass")**
> All persons and entities located within the United States of America
> to whose residential telephone line Defendant and/or its agents
> transmitted a call using a prerecorded voice without prior express
> written consent from the called party at any time from January 30,
> 2020 to the present, including up to and through trial.

24   (Dkt. No. 37-1 at 12.) Defendant opposed certification (Dkt. No. 42) and sought to exclude

25   Plaintiff's expert's report under Federal Rule of Evidence 702. (Dkt. No. 43-3.) Defendant's

26   principal contention was that Plaintiff's class definitions, which included the consent issue,

27   created improper fail safe classes. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

28

*LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (holding a court may not "create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct.") (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016)).

On March 25, 2025, the Court heard argument on Plaintiff's motion, focusing primarily on the consent issue and whether Plaintiff's definitions created fail safe classes that could be redefined without being overbroad. At the hearing, the Court noted that although consent in a TCPA case is an affirmative defense, Plaintiff "actually pled the lack of consent in [his] class definition." So, Plaintiff had the burden of proving class certification was warranted notwithstanding the consent issue. (Dkt. No. 61 at 3:20-4:2.) Plaintiff argued the website consent was insufficient as a matter of law as to all putative class members, but he provided no evidence—or law—to support this assertion. (*Id.* at 4:25-5:7.) Defendant complained Plaintiff attacked the consent as to only one of many websites Defendant uses to obtain consents—Bestamericansavings.com—even though Defendant had advised Plaintiff it uses many websites. (*Id.* at 5:14-6:11.) The Court concluded that based on the then-current record Plaintiff had not met his class certification burden given the consent issue. (*Id.* at 7:25-8:4.) Plaintiff then offered to "delete the class definition part about the defense," (Dkt. No. 61 at 12:2-4.), but the Court was skeptical this deletion would resolve the issue. Further, the Court observed: "I don't know how you would [define a class without requiring consent]. I don't know. I don't think you can just take it out because then we might have a class that is 95 percent of people who don't have any standing; right?" (Dkt. No. 61 at 9:11-20.) The Court further cautioned Plaintiff's unique defense to consent—that someone else must have completed Defendant's consent form given he never visited Bestamericasavings.com—may make him atypical for purposes of Rule 23. (*Id.* at 10:5-9.)

Accordingly, the Court ruled: "I'm going to deny the motion for class certification for the reasons we've just discussed. And what I want you to do is then come make an offer of proof as to what your new class definition would be and how you believe it would satisfy." (*Id.* at 12:12-16.) Following Plaintiff's offer of proof, the Court permitted Plaintiff to file the pending renewed motion for class certification.

//

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E. Plaintiff's Renewed Motion for Class Certification

Plaintiff's renewed motion offers four sub-classes. Plaintiff outlines two amended 'broad' sub-classes and, in the alternative, two new 'narrow' sub-classes.

**Broad DNC Sub-Class No. 1**
*All persons within the United States of America who have or had a residentially subscribed telephone number registered on the National Do-Not-Call Registry and whose residentially subscribed number appears on call logs showing Energy BPO Corp. ("Energy BPO") outbound calls with campaign designations showing those numbers were called to sell Spark Energy services (e.g. Ex. X (convoso), column R, Campaign Name of "Spark Energy – CA", or Ex. X (export), column F Campaign ID of "1005" or "Spark_1005") to whose telephone number Energy BPO transmitted two or more telemarketing calls in one calendar year at any time from January 30, 2020 to the present, including up to and through trial.*

**Broad Prerecord Sub-Class No. 2**
*All persons within the United States of America who have or had a residentially subscribed telephone number and whose residentially subscribed number appears on call logs showing Energy BPO calls with campaign designations showing those numbers were called to sell Spark Energy services (e.g. Ex. X (convoso), column R, Campaign Name of "Spark Energy – CA", or Ex. X (export), column F Campaign ID of "1005" or "Spark_1005") to whose telephone number Energy BPO transmitted a prerecorded message at any time from January 30, 2020 to the present, including up to and through trial.*

**Narrow DNC Sub-Class No. 1**
*All persons within the United States of America who have or had a residentially subscribed telephone number they registered on the National Do-Not-Call Registry and whose residentially subscribed number appears on **both** call logs showing Energy BPO Corp. ("Energy BPO") outbound calls (e.g., Convoso call logs) **and** the Acquire Crowd lead records showing the phone number and other lead information was allegedly garnered from the www.bestamericansavings.com website (e.g., column N) to whose telephone number Energy BPO transmitted two or more telemarketing calls in one calendar year at any time from January 30, 2020 to the present, including up to and through trial.*

**Narrow Prerecord Sub-Class No. 2**
*All persons within the United States of America who have or had a residentially subscribed telephone number and whose residentially subscribed number appears on **both** call logs showing Energy BPO Corp. ("Energy BPO") outbound calls (e.g., Convoso call logs) **and** the Acquire Crowd lead records showing the phone number and other lead information was allegedly garnered from the www.bestamericansavings.com website (e.g. column N) to whose telephone number Energy BPO transmitted a prerecorded message at any time from January 30, 2020 to the present, including up to and through trial.*

1    (Dkt. No. 68-1 at 11-12.) The "broad" class definitions mirror Plaintiff's earlier definitions, except

2    the new definitions reference call logs disclosed by Defendant and exclude the "without prior

3    express written consent" language. (*Id.*; Dkt. No. 37-1, at 12.) The "narrow" class definitions

4    contain additional language: "the Acquire Crowd lead records show[] the [class member's] phone

5    number and other lead information was allegedly garnered from the

6    www.bestamericansavings.com website[.]" (Dkt. No. 68-1 at 11-12.) The narrower class

7    definitions limit the class to people whose leads were garnered from the bestamericansavings.com

8    website, as opposed to other URLs Defendant's vendors use.

## DISCUSSION

10          "Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal

11    court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). "Before it can

12    certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of

13    both Rule 23(a) and 23(b)(3) have been satisfied." *Olean Wholesale Grocery* Coop., 31 F.4th at

14    664. Under Rule 23(a), a case is appropriate for certification if: (1) the class is so numerous that

15    joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

16    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

17    class; and (4) the representative parties will fairly and adequately protect the interests of the class.

18    Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find "the questions of law or fact

19    common to class members predominate over any questions affecting only individual members,

20    and that a class action is superior to other available methods for fairly and efficiently adjudicating

21    the controversy." Fed. R. Civ. P. 23(b)(3). "[P]laintiffs wishing to proceed through a class action

22    must actually prove—not simply plead—that their proposed class satisfies each requirement of

23    Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)," and that proof

24    must be by a preponderance of the evidence. *Olean Wholesale Grocery Coop.*, 31 F.4th at 664.

25          **A.    Defendant's Consent Defense and Class Certification**

26          Under the TCPA, "express consent" is an affirmative defense to a TCPA claim alleging

27    unsolicited phone calls. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir.

28    2017). So, Defendant "bears the burden of proof on the issue of consent." *True Health*

8

*Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). Plaintiff bears the burden of proving class certification is appropriate, and "the burden of proving consent strongly affects the analysis." *Id.* In deciding if class certification is warranted, a court considers the consent defenses the defendant "has advanced and for which it has provided supporting evidence." *Id.* at 932.

Here, Defendant asserts it requires its vendors to obtain consent before contacting people, and Defendant tailors its evidence to show the consent of Plaintiff, members of the broad sub-classes, and members of the narrow sub-classes. Broadly speaking, the evidence consists of webforms and session replays where class members purportedly entered their contact information and consented to be contacted by Defendant's vendors. To show Plaintiff's consent, Defendant produced the webform with Plaintiff's contact information that Defendant's vendors received, metadata about when and where the website was visited, and a session replay of the website visit. (Dkt. No. 78-3 ¶¶ 21-24; Dkt. No. 78-4; Dkt. No. 79-1). Defendant also produced webforms from the same website, but on different dates. Plaintiff's purported visit occurred on March 3, 2023, so Defendant produced webforms from January 16, 2023 and March 3, 2023 to show the website had consent language at the time. (Dkt. No. 78-5, Dkt No. 78-6.)

As to the broad sub-classes, Defendant claims its vendors obtained leads through "hundreds" of different URLs which had "drastically" different consent language. (Dkt. No. 78-3 ¶¶ 10, 31.) Thus, to show consent of the broad sub-classes, Defendant produced Certificates of Authenticity from another website Defendant's vendors used, freesamplesprousa.com. (Dkt. No. 78-3 ¶¶ 31-33; Dkt. No. 78-9.) Finally, the narrow sub-classes consist solely of people whose information was garnered from the bestamericansavings.com website, and "[d]epending on the date an individual visited bestamericansavings.com, there are multiple versions of the webform they would have encountered." (Dkt. No. 78-3 ¶ 29.) Thus, Defendant produced an example of what consent language the website displayed on September 15, 2022 and metadata for other signups on the website. (Dkt. No. 78-7 at 3-4).

//

//

United States District Court
Northern District of California

**B.  Typicality and Adequacy**

"[T]he typicality and adequacy inquiries tend to significantly overlap." *Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotation marks and citation omitted). Typicality is not met when the named plaintiff is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Similarly, adequacy of representation requires the named plaintiff be able to "prosecute the action vigorously on behalf of the class," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), which depends on "a sharing of interests between representatives and absentees." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

Here, the requirements of typicality and adequacy are not met. Because Plaintiff swears he did not visit the bestamericansavings.com website and provide his contact information, he cannot raise arguments on behalf of absent class members who did input their contact information into a website vendor used by Defendant. For example, in response to Defendant's consent defense, Plaintiff argues the consent language was not always present on the various websites, including bestamericansavings.com, and even if the consent language was present, it does not constitute valid consent under the TCPA. (Dkt. No. 68-1 at 19-24.)   But because Plaintiff never saw the bestamericasavings.com website, let alone inputted his contact information, he does not have standing to challenge whether the website disclosures were sufficient to provide Defendant consent to contact the absent class members. To put it another way, his attack on Defendant's consent defense—I did not visit the website and input my contact information—is not typical of the consent defense of absent class members who did visit the websites and provide their contact information.  And, for the same reason, he is not an adequate representative of such absent class members.

*Tan v. Grubhub, Inc.*, 2016 WL 4721439 (N.D. Cal. 2016), *aff'd sub nom. Lawson v.*

1  *Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021), is instructive.  There, the named plaintiff was one of

2  two individuals to opt out of an arbitration agreement, but every putative class member entered

3  into the arbitration agreement. (*Id.* at *2.) The court held the named plaintiff's "claims are not

4  typical of the putative class members, nor can he adequately represent the interests of those

5  members" because he "would be unable to credibly make several procedural unconscionability

6  arguments on behalf of the unnamed class members." *Id.* at *3.  The Ninth Circuit affirmed,

7  holding "[t]he district court correctly held Lawson could not satisfy the requirements in Rule 23(a)

8  because he is neither typical of the class nor an adequate representative." *Lawson*, 13 F.4th at 913.

9  Same here.  As Plaintiff swears he did not provide the lead-generating website with his contact

10  information, his consent defense is not typical of the putative class members who did and he

11  likewise cannot adequately represent the interest of those class members who did.

12      A court in this District has reached the same conclusion in a similar TCPA context. In

13  *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019), the named plaintiff

14  moved to certify a class of persons whom defendant contacted one or more times, in violation of

15  the TCPA. *Id.* at 984. There, as here, the named plaintiff had "never visited" the defendant's

16  websites yet sought to challenge on a class-wide basis the websites' compliance with the TCPA's

17  consent requirements. *Id.* at 987–988. The district court denied a motion for class certification on

18  the grounds the plaintiff had not demonstrated typicality and adequacy because he asserted he did

19  not visit the website through which the defendant claimed to have garnered consent to be

20  contacted.  The court reasoned while the plaintiff had offered "a plan for litigating the express

21  consent issue on a class-wide basis, arguing lack of contract formation based upon the uniform

22  failure of [the website vendor's] websites to comply with the 'signature' and 'clear and

23  conspicuous disclosure' requirements under the TCPA, . . . he ha[d] not offered authority showing

24  that he can properly litigate those issues if he himself never visited the . . . websites." *Id.* at 987-

25  88.  And *Lawson*, decided after *Berman*, is binding Ninth Circuit authority confirming that he

26  could not.  Again, same here.

27      In sum, Plaintiff has failed to show his challenge to Defendant's advanced and supported

28  consent defense is typical of the class, Fed. R. Civ. P. 23(a)(3), or that he has standing to

"prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

## C. Predominance

Plaintiff has also not satisfied the predominance requirement of Rule 23(b)(3). Predominance "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (internal citation omitted). Given the evidence of putative class members' providing their contact information to the lead-generating websites, and Plaintiff's disavowal of having provided his contact information to the website, Plaintiff has failed to show that common issues predominate. Plaintiff does not proffer any method for determining on a class-wide basis whether a class member visited a website and provided contact information; so, answering that question will be individual for each class member.

*McKesson* and a subsequent case, *Trenz v. On-Line Administrators, Inc.*, 2020 WL 5823565 (C.D. Cal. 2020), illustrate this point. *McKesson* analyzed evidence of predominance with respect to multiple sub-classes and reached a different conclusion as to each sub-class. 829 F.3d at 932-33. *McKesson* found common issues predominated where, unlike here, a sub-class of people provided consented through two types of agreements that had "little or no variation." *Id.* at 932. By contrast, the court denied certification for a sub-class whose claims were "based on individual communications and personal relationships" because of "[t]he variation in such communications and relationships."[3] *Id.* Similarly, *Trenz* decertified a class of TCPA plaintiffs where, as here, the defendants' evidence showed class members provided consent through "privacy notices and other forms" and "the terms of the documents varied both among dealerships and over time." 2020 WL 5823545 at *7. Accordingly, the court found the defendants "advanced adequate evidence demonstrating that consent defenses … will require individualized inquiries," which is "a clear bar to class certification in TCPA matters." *Id.* at *7-8 (collecting cases).

---

[3] *McKesson* also remanded with respect to class members who "check[ed] a box" and "complet[ed] a written consent form" because the record was unclear on whether these forms were similar to those of other class members. 829 F.3d at 932-933.

United States District Court
Northern District of California

In his Reply Memorandum, Plaintiff suggests for the first time that all of Defendant's leads may be fraudulent. Plaintiff's counsel claims he "sampled Acquire Crowd database" and now suspects a "web bot, employee, or contactors for the lead generator" copied customers' contact information into the bestamericansavings.com website. (Dkt. No. 81 at 10). The Court sustains Defendant's objections and **STRIKES** this argument and the supporting declaration of Bradley McFarland because Plaintiff failed to make this argument in his Complaint, opening brief, or in the prior briefing on class certification. (*See generally* Dkt. Nos. 23, 34, 61, 68.); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (parties may not "submit 'new' evidence in their reply without affording [the opposing party] an opportunity to respond. Such a result would be unfair.") But even if considered, Plaintiff's theory does not satisfy his burden of proving predominance of common questions by a preponderance of the evidence. Far from offering a plan for resolving the issue class-wide, Plaintiff concedes his bot theory "is speculation." (Dkt. No. 81 at 11.)

Accordingly, the Court finds the questions of law or fact common to class members do not predominate over any questions affecting only individual members, Plaintiff's claims and defenses are not "typical" of those of the class, and Plaintiff cannot "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (a)(4), (b)(3). Because these elements of Rule 23(a) and Rule 23(b) are not met, the Court declines to address the parties' arguments about numerosity and commonality.

### D.  Leave to File a Further Class Certification Motion is Denied

The Court declines to grant leave to Plaintiff to file yet a third class certification motion. His first class certification motion failed because he himself proposed a fail-safe class which expressly involved a lack of consent, but then failed to address how consent could be decided on a class-wide basis. And before the Court granted Plaintiff leave to file a second class action motion, the Court specifically cautioned Plaintiff that certification would be challenging given that Plaintiff insists he did not visit the website which provided the lead information to Defendant. Yet, Plaintiff's subsequent motion for class certification did not grapple with that fact and how it affects his typicality and adequacy. Then in his Reply he improperly raised an entirely new theory—that all of the leads generated from bestamericansavings.com were fabricated. Even apart

13

from its tardiness, Plaintiff's suggestion is pure speculation unencumbered by evidence. So, the Court declines to give Plaintiff a third bite at the apple. Plaintiff may prosecute his own claim, but the Court in its discretion declines to appoint him to bring claims on behalf of others.

**CONCLUSION**

For the reasons set forth above, the Court DENIES Plaintiff's motion for class certification. The Court sets a further case management conference for December 3, 2025 at 2:00 p.m. via Zoom video. An updated joint case management conference statement is due one week in advance.

**IT IS SO ORDERED.**

Dated: October 21, 2025

JACQUELINE SCOTT CORLEY
United States District Judge